**Clifford ADAMS, Appellant,**

v.

**Keisha FERREIRA, Appellee.**

**No. 97–FM–602.**

District of Columbia Court of Appeals.

Argued Oct. 15, 1999.

Decided Dec. 16, 1999.

Enid Hinkes, Washington, DC, for appellant.

Sharlene E. Williams, Assistant Corporation Counsel, with whom John M. Ferren, Corporation Counsel at the time the brief was filed, and Charles L. Reischel, Deputy Corporation Counsel, were on the brief, for appellee.

Before FARRELL, GLICKMAN, and WASHINGTON, Associate Judges.

WASHINGTON, Associate Judge:

The principal issue on appeal is whether the trial court erred in extending a civil protection order ("CPO"), *sua sponte.* For the following reasons, we reverse.

**I.**

On August 4, 1995, appellee, Keisha Ferreira, filed a petition and affidavit for civil protection order against appellant, Clifford Adams, for allegedly picking her up and throwing her on the ground. Because Ferreira and Adams had been cohabitating at the time of the incident, the incident was treated as an intrafamily offense under D.C.Code § 16–1001(5) (1981). A notice of hearing and order to appear was mailed to Adams.

Adams appeared at the August 16, 1995 hearing at which time he consented to an order directing that he would not "molest, assault, or in any manner threaten or physically abuse" Ferreira for a period of twelve months. Adams also agreed to immediately register and participate in a domestic violence counseling program.

On November 20, 1995, a notification of non-compliance was filed by Adams' probation officer ("PO") who reported that he had failed to fully comply with the court's order. The PO specifically stated that Adams failed to report for intake/orientation, failed to attend scheduled counseling sessions, and failed to enroll and success-

fully complete batterer's counseling. The PO also complained that Adams had failed to return telephone calls and appeared to have a substance abuse problem.

A show cause order was issued by the trial court on December 7, 1995, scheduling a hearing on December 21, 1995. The order was mailed to Adams at his address of record, and his PO was notified about the hearing. The PO appeared at the hearing on December 21, 1995, but Adams failed to do so. Therefore, a bench warrant was subsequently issued for his arrest. On January 19, 1996, Adams voluntarily turned himself in, the trial court appointed him counsel, and he provided a corrected address and telephone number to the trial court. The trial court then vacated the show cause order and quashed the bench warrant. Adams was ordered to attend orientation for the domestic violence program and to keep the court apprised of his correct address.

On May 30, 1996, the PO filed another report that Adams had failed to attend counseling sessions and failed to enroll and successfully complete a batterer's counseling program. The PO requested that the trial court initiate contempt proceedings. The trial court entered a second show cause order on July 18, 1996, scheduling a hearing for August 16, 1996. The order was mailed to the corrected address Adams had previously provided to the trial court and to his court-appointed attorney. Adams failed to appear. The trial court then continued the case to September 6, 1996, and issued another bench warrant for Adams' arrest. On September 6, 1996, Adams' counsel appeared but he did not. The bench warrant remained outstanding, and the hearing was rescheduled for September 25, 1996. On September 25, 1996, Adams again failed to appear for the hearing. The bench warrant remained outstanding and no further hearing was set.

Adams was arrested on the bench warrant on March 8, 1997. A hearing was held on March 11, 1997, at which time Adams, his attorney, and the Assistant Corporation Counsel were present.

Adams stated that he and Ferreira no longer were together and requested that the show cause order be vacated and the case dismissed. The trial court ordered, *sua sponte*, that the CPO be extended for twelve months and that Adams complete a counseling program for domestic violence. Adams filed this timely appeal.

## II.

■ The Intrafamily Offenses Act ("Act") states that "[a] protection order issued pursuant to this section shall be effective for such period up to one year as the Family Division may specify, but the Family Division may, *upon motion of any party to the original proceeding, extend, rescind, or modify the order for good cause shown.*" D.C.Code § 16–1005(d) (emphasis added). The Act further provides that "[v]iolation of any temporary or permanent order issued under this subchapter ... shall be punishable as contempt." D.C.Code § 16–1005(f).

In this case, neither party to the original proceeding initiated the subsequent proceedings for extension of the CPO. The trial court noted that there had not been any indication of interest in further proceedings by Ferreira, the beneficiary of the protection order, and that this was truly a matter between Adams and the trial court. Because no party to the original proceeding moved to have the CPO extended, the trial court had no authority to extend it beyond its one year term. However, the trial court could have held an evidentiary hearing and upon an appropriate finding held Adams in contempt for violating the CPO. *See* D.C.Code § 16–1005(f); *Cruz–Foster v. Foster,* 597 A.2d 927 (D.C.1991). There appears to be no dispute that Adams neglected to attend counseling sessions, thereby violating the CPO by failing to comply with one of its terms.

■ In this case, the trial court specifically declined to use its contempt powers and opted instead to use a more benevo-

lent approach to enforcing compliance with its earlier order. However, despite the efforts of the trial court to enforce compliance with the terms of the CPO in a way so as not to saddle Adams with a criminal record, such an extension, *sua sponte,* was beyond the power of the court to impose.[1] Although the trial court retains broad authority to appropriately sanction persons who violate CPOs, such authority under the Act lies in the trial court's contempt powers. Because the trial court here expressly stated that it was not using its contempt powers, its order to Adams to continue to comply with the terms of a CPO that had expired was entered without authority. Accordingly, we reverse.[2]

*Reversed.*

---

1. The Intrafamily Offenses Act specifically refers to the court's use of its contempt powers in terms of punishment, a term generally associated with criminal contempt. However, we recognize that there may be circumstances where it would be more appropriate for the court to compel compliance with the terms of a CPO using its civil contempt powers rather than its criminal contempt powers. In this case, had the trial court not declined to use its contempt powers and, after a hearing, had held Adams in civil contempt, Adams, of course, would not have been "saddled with a criminal record."

2. The expiration of the CPO in this case would not have affected subsequent contempt proceedings because the record contains ample evidence that several orders to show cause and bench warrants were issued for Adams' failure to comply with the CPO during the effective dates of the CPO, and such orders and bench warrants toll the expiration of the CPO. *See Dent v. District of Columbia,* 465 A.2d 841, 842 (D.C.1983).