Tinota **CLARK**, Appellant,

v.

**UNITED STATES**, Appellee.

**No. 10–CM–481.**

District of Columbia Court of Appeals.

Submitted March 8, 2011.

Decided Aug. 18, 2011.

---

Joanne Vasco, Hyattsville, MD, appointed by the court, was on the brief, for appellant.

Ronald C. Machen Jr., United States Attorney, and Roy W. McLeese III, Michelle D. Thomas, Elizabeth H. Danello, Elizabeth Trosman, and John P. Mannarino, Assistant United States Attorneys, were on the brief, for appellee.

Joan S. Meier, Director, Domestic Violence Legal Empowerment and Appeals Project, and Elizabeth S. Liu, Domestic Violence Legal Empowerment and Appeals Project, filed a brief on behalf of amici curiae Domestic Violence Legal Empowerment and Appeals Project, Ayuda, Break

the Cycle, D.C. Coalition Against Domestic Violence, Survivors and Advocates for Empowerment, Women Empowered Against Violence, Catherine F. Klein, Margaret Martin Barry, and Lisa Vollendorf Martin, Families and the Law Clinic, Columbus School of Law, Catholic University of America.

Before BLACKBURNE–RIGSBY, Associate Judge, REID, Associate Judge, Retired,* and PRYOR, Senior Judge.

PER CURIAM:

At the conclusion of a non-jury trial, appellant was convicted of violating a civil protection order ("CPO"),[1] simple assault,[2] and destruction of property.[3] He challenges his conviction for violating the CPO, arguing that it infringed the Double Jeopardy Clause,[4] and also that the trial court erroneously rejected a defense that the complainant consented to his prohibited contact. Because we conclude that the CPO violation constituted a separate offense from appellant's other charges and that appellant offered no viable defense to the CPO violation, we affirm.

## I.

On September 14, 2009, a judge in the Superior Court issued a CPO requiring appellant to stay at least 100 feet away from the complainant, a female friend, and also provided that he "shall not assault, threaten, harass, or stalk petitioner or her child(ren) or destroy Petitioner's property." In capital letters, the order advised, "only the court can change this order" and that a "failure to comply with this order is a criminal offense."

Nonetheless, complainant reconciled with appellant and willingly contacted him on numerous occasions. Appellant's employer testified for the defense, recalling that complainant made sporadic visits to appellant's workplace following the issuance of the CPO and appeared affectionate in his presence. Complainant's testimony was inconsistent as to her contact with appellant after the CPO was issued; however, she admitted visiting appellant in jail while his trial was pending and in this case stated that she wished to reestablish a relationship with him.

Earlier, an altercation took place between appellant and complainant on the night of January 30, 2010, while the CPO was in full effect. Complainant testified she heard a commotion outside the front door of her third-floor apartment while cutting a piece of cake. She entered a stairwell outside of her apartment to investigate and encountered appellant, who was apparently intoxicated and attempting to talk to her. Appellant grabbed complainant, prompting her to cut his face with the butter knife, which she carried. Complainant retreated up the steps and into her apartment as appellant ran to the rear of the building. There, he began kicking in complainant's backdoor, causing the door to jam and disfiguring the paint on a wall. Appellant eventually left the premises without contact with the police. However, about an hour later, appellant returned to the scene and began "hollering"

---

* Judge Reid was an Associate Judge of the court at the time of calendaring. Her status changed to Associate Judge, Retired, on April 7, 2011.

1. D.C.Code § 16–1005(g) (2001).

2. D.C.Code § 22–404 (2001).

3. D.C.Code § 22–303 (2001).

4. U.S. CONST. amend. V, cl. 2 (declaring that no man shall "be subject for the same offense to be twice put in jeopardy of life or limb. . . .").

outside complainant's window until she finally called the authorities.

By information filed on February 1, 2010, appellant was charged with simple assault, destruction of property, and violating a CPO "by approaching and making contact with [the complainant]." After a one-day bench trial, the trial court concluded in its Findings of Fact that complainant repeatedly contacted appellant in disregard of the CPO.

Appellant argued that complainant's consensual contact undermined the *mens rea* element of the CPO violation and thus constituted an affirmative defense to the charge. The trial court disagreed, concluding that a violation of a CPO "is a general intent crime and one ... [merely] has to intend to commit the act of violating the order." Although the court remained uncertain whether an affirmative defense of consent exists in CPO violation cases, it concluded that because appellant "returned after the cutting and kick[ing] the door, he should have known that he was in violation of a court order." Thus, even when assuming that consent constituted an affirmative defense, the trial court found appellant guilty on all three charges.

## II.

Appellant argues, for the first time on appeal in a supplemental brief, that the trial court erroneously imposed successive punishments for the same criminal offense in violation of the Double Jeopardy Clause because the conduct constituting the CPO violation was the same that constituted the other offenses. Generally, defects not sufficiently brought to the attention of the trial court will be reviewed only for plain error on appeal. Super. Ct.Crim. R. 52(b); *see generally United States v. Olano,* 507 U.S. 725, 731–37, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993). However, we have

also held that "[t]he constitutional immunity from double jeopardy is a personal right which, if not affirmatively pleaded by the defendant at the time of trial, will be regarded as waived." *Christian v. United States,* 394 A.2d 1, 38 (D.C.1978) (citation omitted). Even when reviewing the merits of appellant's double jeopardy claim, we perceive no error, let alone plain error, in the multiple punishments that were imposed. *See Harris v. District of Columbia,* 991 A.2d 1199, 1203 (D.C.2010) (noting that this court has "not refrained from reaching merger issues which become apparent for the first time on appeal ....") (internal quotations and citations omitted).

In general, "The Double Jeopardy Clause of the Fifth Amendment prohibits a second prosecution for a single crime, and it [also] protects the defendant against multiple punishments for the same offense[,]" *Ellison v. United States,* 919 A.2d 612, 614 (D.C.2007) (citing *North Carolina v. Pearce,* 395 U.S. 711, 717, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969)), including lesser included offenses. *See Evans v. United States,* 987 A.2d 1138, 1141 (D.C.2010). It does not, however, prohibit separate and cumulative punishment for separate criminal acts. *See, e.g., Owens v. United States,* 497 A.2d 1086, 1094–95 (D.C.1985). To determine whether two offenses criminalize separate acts, we may apply the *"Blockburger"* test,[5] inquiring "whether each offense contains an element not contained in the other; if not, they are the 'same offence' and double jeopardy bars additional punishment...." *United States v. Dixon,* 509 U.S. 688, 696, 113 S.Ct. 2849, 125 L.Ed.2d 556 (1993).

In *Dixon,* 509 U.S. at 688, 113 S.Ct. 2849, a District of Columbia case, the Supreme Court, in plurality opinions, indicated that a defendant's successive convictions for violating a CPO and for simple

---

**5.** *Blockburger v. United States,* 284 U.S. 299, 304, 52 S.Ct. 180, 76 L.Ed. 306 (1932).

assault contravened double jeopardy principles. There, the CPO ordered the defendant not to "molest, assault, or in any manner threaten or physically abuse" the complainant. *Id.* at 692, 113 S.Ct. 2849. After the defendant violated this order, the complainant successfully sought criminal contempt proceedings against the defendant predicated upon, *inter alia,* his act of assaulting her stemming from an incident on November 6, 1987. *Id.* at 693, 113 S.Ct. 2849.[6] After being convicted of violating the CPO based upon the assault, defendant was later convicted in a separate criminal proceeding of simple assault based upon the same incident. On appeal, the Supreme Court viewed defendant's simple assault conviction as a replication of the CPO violation. Therefore, the Court concluded that the defendant's subsequent prosecution violated the bar on double jeopardy. *Id.* at 698, 113 S.Ct. 2849.

■ Here, as revealed by the information filed by the government, appellant's violation of the CPO was premised upon his act of "approaching and making contact with [the complainant]"—an infraction of the provision that he stay at least one hundred feet away from her. In its Findings of Fact and Conclusions of Law, the trial court accordingly found appellant guilty of contempt because he "*returned* [to complainant's residence] . . . and should have known that he was in violation of a court order." (Emphasis added.) Thus, although appellant's CPO incorporated the crime of simple assault by ordering that he "shall not *assault,* threaten, harass, or stalk petitioner," he was ultimately prosecuted and convicted of violating the CPO for conduct other than assault, thereby rendering it a different criminal offense.

Therefore, this case is distinguishable from *Dixon,* 509 U.S. at 698, 113 S.Ct. 2849, because appellant was not tried for contempt predicated upon the same underlying substantive criminal offense that also served as the basis for another charge. When a defendant raises a double jeopardy claim involving a CPO violation, the *Blockburger* analysis is provision-specific, focusing on the particular CPO condition that is alleged to have been violated. *See id.* at 713, 113 S.Ct. 2849 (Rehnquist, C.J., dissenting) (opining that the majority focuses "on the terms of the particular court orders involved . . . ."). Here, the crime of simple assault required proof that the violated CPO provision—coming within one hundred feet of the petitioner—did not.[7] Therefore, we conclude that appellant was convicted for separate criminal acts, in compliance with the Double Jeopardy Clause. *See Owens,* 497 A.2d at 1094–95.

6. *See* D.C.Code § 16–1002 (2001); *Green v. Green,* 642 A.2d 1275, 1279–80 (D.C.1994) (allowing individuals protected by a CPO to pursue a "private right of action" for contempt independently of the U.S. Attorney's Office). We note that double jeopardy principles can apply regardless of whether successive prosecutions are instituted by the U.S. Attorney's Office alone or in conjunction with a private contempt proceeding. *In re Robertson,* 940 A.2d 1050, 1058 (D.C.2008) ("[T]he identity of the prosecutor in the earlier proceeding [is] simply irrelevant for Double Jeopardy Clause purposes.").

7. To prove simple assault, the government must prove beyond a reasonable doubt three elements: "(1) an attempt, with force or violence, to injure another; (2) the apparent present ability to effect the injury; and (3) the intent to do the act constituting the assault." *Macklin v. United States,* 733 A.2d 962, 964 (D.C.1999) (internal quotation marks and citations omitted). In this case, "To establish the elements of a CPO violation, the government . . . present[ed] evidence proving beyond a reasonable doubt that defendant engaged in: (1) willful disobedience (2) of a civil protection order[,]" by coming within one hundred feet of the petitioner. *Davis v. United States,* 834 A.2d 861, 866 (D.C.2003) (quotations omitted).

## III.

■ Appellant also challenges his conviction for violating the CPO, contending that the trial court erroneously rejected an affirmative defense that complainant consented to his contact. "Whether the acts in which the defendant was found to have engaged constitute [a CPO violation] ... is a question of law, and we review the trial court's resolution of that question *de novo*." *Fields v. United States*, 793 A.2d 1260, 1264 (D.C.2002) (citing *Brooks v. United States*, 686 A.2d 214, 219 (D.C. 1996)). However, we have recently considered and rejected appellant's claim in *In re Shirley*, 28 A.3d 506, 513 (D.C.2011), holding that the "consent of the petitioner does not bar a conviction of criminal contempt for violation of a CPO."

■ Indeed, this court may only recognize the existence of an affirmative defense when it can be implied by the words of the statute, the legislative intent of the D.C. Council, or if the defense has already been incorporated by the common law. *See United States v. Moore*, 158 U.S.App.D.C. 375, 392, 486 F.2d 1139, 1156 (1973); *see also United States v. Johnson*, 459 F.3d 990, 997 (9th Cir.2006) ("[The legislature] knows how to create an affirmative defense when it wishes to do so."). As noted in *Shirley*, 2011 WL 2473458, at *5, nothing in the plain language or legislative history of The Intrafamily Offenses Act, D.C.Code § 16–1005 (2001), evinces an intent to abrogate the viability of CPOs simply "because the victim later consents to contact in violation of" its terms. Rather, the Act states in absolute terms, "Any person who violates *any* protection order issued under this subchapter ... *shall be* chargeable with a misdemeanor...." Sections 16–1005(g) and (f) (emphasis added). Therefore, the exclusive route for conciliatory contact when a CPO is in effect is the trial court's modification or rescission of the CPO's terms "for good cause shown." Section 16–1005(d); *see Shirley*, 2011 WL 2473458, at *6.

■ Appellant argues that the absence of a consent defense would lead to inequitable results because a CPO is an equitable remedy and a party who invites its violation should not be entitled to its enforcement under "unclean hands" principles. However, we have already noted that prosecutions for CPO violations may be improper and indeed unfounded where the circumstances reveal that the complainant "approached the [defendant] without his encouragement or consent" or where "compelling humanitarian consideration[s]" exist to justify the forbidden contact. *Shirley*, 2011 WL 2473458, at *5. In recognition of the "broad authority [trial courts retain] to appropriately sanction persons who violate CPOs[,]" a trial judge is entrusted with the discretion to exercise his or her criminal contempt powers when equitable under the circumstances. *Adams v. Ferreira*, 741 A.2d 1046, 1047–48 & 1048 n. 1 (D.C.1999); *see also Cruz–Foster v. Foster*, 597 A.2d 927, 930 (D.C. 1991) (noting that the primary purpose of the Intrafamily Offenses Act "is to protect the moving party, rather than to punish the offender"). With these principles in mind, we perceive no inequity in the criminal enforcement of a CPO where, as here, the defendant willfully violated its restrictions even at the initial behest of its petitioner. *See Shirley*, 2011 WL 2473458, at *6.

## IV.

For the foregoing reasons, we affirm appellant's conviction.

*So ordered.*