Robert Augustus HAYE, Appellant,

v.

UNITED STATES, Appellee.

Nos. 11–CM–1710, 11–CM–1711.

District of Columbia Court of Appeals.

Submitted Nov. 27, 2012.

Decided March 14, 2013.

Sidney R. Bixler was on the brief for appellant.

Ronald C. Machen Jr., United States Attorney, and Elizabeth Trosman, Chrisellen R. Kolb, Elizabeth Alexander, and Kristina L. Ament, Assistant United States Attorneys, were on the brief for appellee.

Before WASHINGTON, Chief Judge, OBERLY, Associate Judge, and KING, Senior Judge.

OBERLY, Associate Judge:

Robert Augustus Haye[1] was convicted of unlawful entry[2] and criminal contempt[3] when he entered 2301 11th Street, part of a public housing complex known as Garfield Terrace in Northwest Washington, D.C., in violation of a barring notice ordering him not to enter Garfield Terrace and a court order directing him to stay away from 2301 11th Street. On appeal, he challenges his convictions, arguing that: (1) unlawful entry and criminal contempt, in this case, are the same offense for double jeopardy purposes; (2) the evidence was insufficient to support Haye's unlawful entry convictions because the government did not prove he had notice that he was barred from Garfield Terrace; and (3) the trial court erred in not declaring a mistrial after a witness testified about prior instances in which Haye had been barred from Garfield Terrace. We agree with Haye's double jeopardy claim that, under the facts of this case, he cannot be punished twice for unlawful entry and criminal contempt, and we remand with instructions

---

1. Robert Haye was sometimes referred to as Robert Hayes in the proceedings below, but most of the documents in the record list him as Robert Haye, without the "s," and that is how we will refer to him.

2. D.C.Code § 22–3302 (2001).

3. D.C.Code § 23–1329 (2001) ("A person who has been conditionally released pursuant to section 23–1321 and who has violated a condition of release shall be subject to . . . prosecution for contempt of court.").

to vacate one of Haye's convictions. In all other respects, we affirm the trial court's judgment.

## I. Facts

This consolidated appeal arises from two separate cases stemming from two incidents in September 2010. The origin of the cases dates back to December 2009, when Haye was arrested for drug possession in the Garfield Terrace housing complex. Darnell Douglass, a police officer with the District's Housing Authority, approached Haye as he was being arrested and notified him that, as a result of his arrest, he would be barred from entering Garfield Terrace for the next five years. Officer Douglass then issued a Housing Authority barring notice, but because Haye was in handcuffs when he issued the barring notice, Officer Douglass gave the notice to the arresting officer to place in a bag with Haye's belongings. Although he did not know whether Haye ever received the physical copy of the barring notice, Officer Douglass explained to Haye "in detail the parts of the barring notice," including a description of the boundaries of Garfield Terrace and the five-year duration of the bar. He "explained to [Haye] that he is barred from Garfield property, that under no circumstances is he permitted to enter back onto the property, even if he's invited by a guest [or] resident," including Haye's mother who lived in Garfield Terrace.

On two occasions in September 2010, Haye returned to Garfield Terrace. On September 17, he was arrested in his mother's Garfield Terrace apartment at 2301 11th Street by Metropolitan Police Department Sergeant Ramey Kyle who had learned of Haye's presence in the building when he attended a community meeting there and the residents were complaining about Haye. As a pretrial condition of his release, the Superior Court ordered Haye to "stay away from ... the entire premises of 2301 11th Street, Northwest, Washington, D.C."

On September 22, 2010, the property manager for Garfield Terrace, Dorothy Glenn, saw Haye coming toward 2301 11th Street and saw him "walk[ ] in the building." Glenn testified that she recognized Haye because he had been barred from the premises several times before, and she knew he was the son of a Garfield Terrace resident.

The trial court found Haye guilty of unlawful entry and criminal contempt based on his return to Garfield Terrace on September 22 and of unlawful entry based on his September 17 return. In finding Haye guilty of unlawful entry on September 22, the trial court found that Officer Douglass had given Haye "sufficient notice ... as to where he was barred from" and that Haye "was specifically given the boundaries by Officer Douglass ... and [he] heard what was said to him," and on September 22, "a person who knew him well, ... Ms. Glenn[,] saw him back at Garfield Terrace." The trial court also found Haye guilty of contempt based on his September 22 return, concluding that the government had proved that Haye "got notice" of the conditional-release order and "willfully violated" it. Haye was found guilty of a second count of unlawful entry for his September 17 return "based upon all the testimony [the trial court] heard, the barring notice, the fact that it was orally given to him, that there's no evidence he didn't hear it or understand it, that he was aware that he was barred and he returned voluntarily."

## II. Discussion

### A. Successive Punishments for the Same Offense

The Double Jeopardy Clause of the Fifth Amendment protects against

multiple punishments for the same criminal offense, unless multiple punishments are expressly authorized by the legislature. *Whalen v. United States*, 445 U.S. 684, 689, 692, 100 S.Ct. 1432, 63 L.Ed.2d 715 (1980) (holding that "[t]he Double Jeopardy Clause at the very least precludes federal courts from imposing consecutive sentences unless authorized by Congress to do so," and "where two statutory provisions proscribe the 'same offense,' they are construed not to authorize cumulative punishments in the absence of a clear indication of contrary legislative intent").[4] To determine whether multiple punishments are for the same criminal offense, we apply the " 'same-elements' test," otherwise known as the *Blockburger*[5] test. *United States v. Dixon*, 509 U.S. 688, 696, 113 S.Ct. 2849, 125 L.Ed.2d 556 (1993); *see also Bradley v. United States*, 856 A.2d 1157, 1160 (D.C.2004). The *Blockburger* test "inquires whether each offense contains an element not contained in the other; if not, they are the 'same offence' and double jeopardy bars additional punishment and successive prosecution." *Dixon*, 509 U.S. at 696, 113 S.Ct. 2849.

The *Blockburger* test also applies in the context of criminal contempt convictions for violations of conditional-release orders. In *Dixon*, a case like this one involving a contempt prosecution under D.C.Code § 23–1329 (as well as a violation of a civil protection order), Justice Scalia, writing for the majority, applied the *Blockburger* test to hold that the prosecution for criminal contempt based on violating a conditional-release order that prohibited commission of any criminal offense barred the subsequent prosecution for the underlying criminal offense. 509 U.S. at 697–700, 113 S.Ct. 2849.

A majority of the *Dixon* Court agreed that the *Blockburger* "same-elements" test applies to double jeopardy claims involving prosecutions for criminal contempt and substantive criminal law violations; however, the fractured opinion produced no consensus on how to apply the *Blockburger* test in this context. To determine the elements of the contempt offense, Justice Scalia looked at the provision of the order that was violated because "the statute by itself imposes no legal obligation on anyone.... Dixon's cocaine possession ... was not an offense under § 23–1329 until a judge incorporated the statutory drug offense into his release order." *Dixon*, 509 U.S. at 697–98, 113 S.Ct. 2849. Chief Justice Rehnquist, on the other hand, would have examined the statutory elements of criminal contempt. *See id.* at 714, 113 S.Ct. 2849 (Rehnquist, J., concurring in part and dissenting in part) ("*Blockburger's* same-elements test requires us to focus, not on the terms of the particular court orders involved, but on the elements of contempt of court in the ordinary sense.").

The government urges us to apply the *Blockburger* test in the "traditional way"

4. The Supreme Court has distinguished between cumulative punishments and successive prosecutions, holding that the Double Jeopardy Clause does not "preclude[ ] the imposition, in a single trial, of cumulative punishments" if the legislature has clearly expressed its intent to punish the same offense under two different statutes. *Missouri v. Hunter*, 459 U.S. 359, 368–69, 103 S.Ct. 673, 74 L.Ed.2d 535 (1983) ("Where, as here, a legislature specifically authorizes cumulative punishment under two statutes, regardless of whether those two statutes proscribe the 'same' conduct under *Blockburger* [*v. United States*, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932) ], a court's task of statutory construction is at an end and the prosecutor may seek and the trial court or jury may impose cumulative punishment under such statutes in a single trial.").

5. *Blockburger v. United States*, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932).

advocated by Chief Justice Rehnquist in his *Dixon* dissent.[6] Although neither position garnered a majority,[7] our decision in *Clark v. United States*, 28 A.3d 514 (D.C. 2011), counsels that we look to the content of the conditional-release order to determine whether it contains an element not contained in the unlawful entry offense.

In *Clark*, we applied *Dixon* to determine whether assault was the same offense as a violation of a civil protection order ("CPO") based on the same incident and thus whether the trial court had erroneously imposed multiple punishments for the same offense. Clark was convicted of violating a CPO, which ordered him to "stay at least 100 feet away from the complainant ... and also provided that he shall not assault" the complainant. *Clark*, 28 A.3d at 516–17. He also was convicted of simple assault based upon the same incident. *Id.* at 517. We observed that the "violation of the CPO was premised upon his act of 'approaching and making contact with [the complainant]'—an infraction of the provision that he stay at least one hundred feet away from her." *Id.* at 518 (alteration in original) (quoting the information filed by the government). The trial court had "found appellant guilty of contempt because he 'returned [to complainant's residence] ... and should have known that he was in violation of a court order.'" *Id.* (alterations in original). We concluded that "although appellant's CPO incorporated the crime of simple assault by ordering that he 'shall not assault, threaten, harass, or stalk petitioner,' he was ultimately prosecuted and convicted of violating the CPO for conduct other than assault, thereby rendering it a different criminal offense." *Id.*

In finding no double jeopardy violation, *Clark* held that when a defendant raises such a claim involving prosecution for a CPO violation, "the *Blockburger* analysis is provision-specific, focusing on the particular CPO condition that is alleged to have been violated." *Clark*, 28 A.3d at 518. We looked at the content of the CPO to determine which provision Clark had violated and then compared that provision with simple assault, concluding that "the crime of simple assault required proof that the violated CPO provision—coming within one hundred feet of the petitioner—did not." *Id.* Clark's sentence for assault therefore did not violate the Double Jeopardy Clause, even though it was based on the same incident.

■ We apply the same analysis in this case and conclude that Haye's convictions for unlawful entry and criminal contempt do not pass the *Blockburger* test. The provision of the release order that Haye violated and that underlies his contempt conviction is the provision that ordered him to "stay away" from the premises of 2301 11th Street. Thus, Haye violated his

---

6. What makes criminal contempt a separate offense under Chief Justice Rehnquist's approach, according to the government, is the existence and knowledge of a judicial order and the willful violation of that order. We agree with the Pennsylvania Supreme Court that Chief Justice Rehnquist's approach "rings hollow," for comparing the statutory elements of criminal contempt "will result in there never being a double jeopardy bar under the *Blockburger* same-elements test, since neither [knowledge of a court order nor the willful violation of it] will ever be necessary in proving a substantive criminal offense and every substantive criminal offense will contain additional elements." *Commonwealth v. Yerby*, 544 Pa. 578, 679 A.2d 217, 220–21 (1996).

7. The section in which Justice Scalia applied *Blockburger* by looking at the content of the conditional-release order was joined only by Justice Kennedy, with Justices White, Stevens, and Souter concurring in the judgment only. *See Dixon*, 509 U.S. at 712 n. 18, 113 S.Ct. 2849.

release order when he willfully *did not* stay away from the premises of 2301 11th Street. In order to prove unlawful entry on the basis of violating a barring notice, the government must prove that a person "entered the premises against the will of the lawful occupant or of the person lawfully in charge thereof." *Bean v. United States*, 709 A.2d 85, 86 (D.C.1998) (internal quotation marks omitted). The barring notice prohibited Haye from entering Garfield Terrace. Thus, Haye committed the offense of unlawful entry when he entered 2301 11th Street, part of Garfield Terrace, in violation of the barring notice.[8] The violated provision of the order—not staying away from the Garfield Terrace building at 2301 11th Street on September 22, 2010—does not require proof of an element that unlawful entry does not also require.[9] Haye's unlawful entry conviction is a "replication of the [release-order] violation" and thus Haye could not be punished for both.[10] *Clark*, 28 A.3d at 518.

 Because Haye did not challenge his successive punishments at trial, his

double jeopardy claim is before us on plain error review. *Clark*, 28 A.3d at 517. Haye is therefore not entitled to relief unless the error was plain, affects his substantial rights, and "seriously affect[s] the fairness, integrity, or public reputation of judicial proceedings." *United States v. Olano*, 507 U.S. 725, 734, 736, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993). An error is plain if it is clear or obvious at the time of appeal. *Henderson v. United States*, 568 U.S. ——, 133 S.Ct. 1121, 185 L.Ed.2d 85 (2013). Haye was tried and convicted in October 2011, after we issued our decision in *Clark*. Although the Supreme Court was not unanimous in its application of *Blockburger* to violations of court orders, *Clark* made clear that this court adopts Justice Scalia's approach and examines the violated provision of a court order to determine if it is the same offense as another for which the defendant has been punished. The error in punishing Haye twice for contempt and unlawful entry—which, as we have explained, were the same offense in this context—was therefore plain.

---

8. Citing a case from the North Carolina Court of Appeals, *State v. Gilley*, 135 N.C.App. 519, 522 S.E.2d 111 (1999), the government attempts to draw a meaningful distinction between an order to stay away and an order not to enter. We do not believe such semantic nuances are significant for purposes of double jeopardy protection.

9. The government argues that even under Justice Scalia's application of *Blockburger*, Haye's convictions do not violate the Double Jeopardy Clause because Garfield Terrace "encompassed more territory than the building at 2301 11th Street" and the barring notice thus proscribed something broader than the conditional-release order. The scope of Garfield Terrace is not entirely clear from the record, but Dorothy Glenn described the address of Garfield Terrace as 2301 11th Street. In any case, whether the barring notice proscribed something more is immaterial here because the territory specified in the conditional-release order—2301 11th Street—

was also incorporated in the barring notice, and by proving that Haye entered a Garfield Terrace building at 2301 11th Street, after having been barred and ordered to stay away, the government simultaneously proved unlawful entry and criminal contempt.

10. Another reason Haye's multiple punishments do not violate the Double Jeopardy Clause, according to the government, is because the two convictions serve different societal interests: contempt proceedings "vindicat[e] the authority of the court," *Young v. United States ex rel. Vuitton et Fils, S.A.*, 481 U.S. 787, 800, 107 S.Ct. 2124, 95 L.Ed.2d 740 (1987), while the unlawful entry statute protects property owners from intruders who know they are required to stay out. As the Court held in *Dixon*, however, the Double Jeopardy Clause "looks to whether the *offenses* are the same, not the interests that the offenses violate." *Dixon*, 509 U.S. at 699, 113 S.Ct. 2849.

We do not find it difficult to conclude that Haye's multiple punishments for the same offense affect his substantial rights and the integrity of the judicial proceedings. As the Ninth Circuit has observed, double jeopardy violations affect an individual's substantial rights by "imposing on him the potential collateral consequences of an additional conviction." *United States v. Schales*, 546 F.3d 965, 980 (9th Cir.2008) (internal quotation marks omitted). And "[b]ecause the prohibition against double jeopardy is a cornerstone of our system of constitutional criminal procedure, this error threatens the fairness, integrity, and public reputation of our judicial proceedings." *Id.* (internal quotation marks omitted).

Finding plain error in the court's imposition of multiple punishments for unlawful entry and contempt, we remand this case to the trial court with instructions to vacate either Haye's September 22 unlawful entry conviction or his contempt conviction and to resentence Haye in the trial court's discretion and in accordance with this opinion. *See Nixon v. United States*, 730 A.2d 145, 155 & n. 12 (D.C.1999); *see also Schales*, 546 F.3d at 980.

### B. Sufficiency of the Evidence

■■■ Haye next contends that the evidence was insufficient to support his two convictions for unlawful entry because the government failed to prove beyond a reasonable doubt that he had notice of the order that barred him from Garfield Terrace. This court "views the evidence in the light most favorable to the government, giving full play to the right of the [trier of fact] to determine credibility, weigh the evidence, and draw justifiable inferences of fact." *Gibson v. United*

*States*, 792 A.2d 1059, 1065 (D.C.2002) (internal quotation marks omitted). The evidence established that Haye entered Garfield Terrace after having been barred and without lawful authority.[11] The trial court credited Officer Douglass's testimony that he orally explained to Haye that he was barred from Garfield Terrace even if invited by a resident. This credibility determination was not clearly erroneous. *See Stroman v. United States*, 878 A.2d 1241, 1244 (D.C.2005). There is no requirement that Haye actually have received a written barring notice as long as Officer Douglass attempted to deliver such a notice, which, according to his testimony, he did. *See* 14 DCMR § 9600.7(a) (2005). Because Haye was orally notified by a Housing Authority officer that he was barred from Garfield Terrace and because he returned to the premises on two occasions after having been barred, the evidence supports his convictions for unlawful entry. *See Culp v. United States*, 486 A.2d 1174, 1176 (D.C. 1985).

### C. Other Crimes Evidence

■■■ Haye's final argument is that the trial court erred when it allowed Dorothy Glenn to testify that he had been barred from Garfield Terrace on prior occasions. Over Haye's objection, the trial court permitted the testimony because "it's relevant ... to establish her familiarity with [Haye] and to accurately identify him." Evidence of prior bad acts may be admissible under *Johnson*, "where such evidence (1) is direct and substantial proof of the charged crime, (2) is closely intertwined with the evidence of the charged crime, or (3) is necessary to place the charged crime in an understandable context." *Johnson v. United States*, 683 A.2d

---

11. There is no dispute that as a Housing Authority police officer, Douglass was authorized to bar Haye from Garfield Terrace, a Housing Authority property, for his drug arrest. *See* 14 DCMR § 9600.5.

1087, 1098 (D.C.1996). In this case, Glenn's reference to Haye's prior bars placed her testimony in context by explaining how she would have recognized the man entering Garfield Terrace as Haye. *See Minick v. United States,* 506 A.2d 1115, 1119 (D.C.1986) ("The witnesses' specific references to a detail like the parole papers added narrative veracity to their testimony and reinforced their credibility to recall the events on the evening in question.") (internal quotation marks omitted). Evidence of other crimes that constitutes *Johnson* evidence may nonetheless be inadmissible if the prejudicial impact outweighs the probative value. However, the risk of unfair prejudice from other crimes evidence is not present in a bench trial, where "the trial judge is presumed to know the purpose for which evidence may be considered." [12] *Bacchus v. United States,* 970 A.2d 269, 276 (D.C.2009).

### III. Conclusion

This case is remanded to the trial court with instructions to vacate in part and resentence Haye in accordance with this opinion.

*Remanded in part and affirmed in part.*

---

12. Haye also challenges the admission of Sergeant Kyle's testimony about attending a community meeting at which the residents complained about Haye. Haye did not object to this testimony, however, and he cannot show any error, let alone plain error, in its admission because, under *Johnson,* it was admissible to explain the immediate circumstances surrounding the offense. *See Johnson,* 683 A.2d at 1098.