*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

# DISTRICT OF COLUMBIA COURT OF APPEALS

No. 13-CM-628

FRANCISCA C. MILLER, APPELLANT,

v.

UNITED STATES, APPELLEE.

Appeal from the Superior Court
of the District of Columbia
(DVM-358-13)

(Hon. A. Franklin Burgess Jr., Trial Judge)

(Argued May 7, 2019　　　　　　　　　　　Decided June 6, 2019)

*Donna L. Biderman* for appellant.

*Lauren R. Bates*, Assistant United States Attorney, with whom *Jessie K. Liu*, United States Attorney, and *Elizabeth Trosman*, *John P. Mannarino*, and *Rikki D. McCoy*, Assistant United States Attorneys, were on the briefs, for appellee.

Before BECKWITH and MCLEESE, *Associate Judges*, and NEBEKER, *Senior Judge*.

MCLEESE, *Associate Judge*: After a bench trial, appellant Francisca Miller was found guilty of attempted possession of a prohibited weapon and attempted threats to do bodily harm. Ms. Miller is not a United States citizen, and it is uncontested that her convictions legally authorize her to be removed from the United

States. Relying on our recent decision in *Bado v. United States*, 186 A.3d 1243 (D.C. 2018) (en banc), Ms. Miller argues among other things that she was denied her constitutional right to a jury trial. We agree, and we therefore vacate Ms. Miller's convictions and remand for further proceedings.

## I.

The United States's evidence at trial was as follows. On the date of the offense, Ms. Miller lived at 3552 Warter Street NW with Teresa Smith and Ms. Smith's boyfriend, Marquis Childs. Ms. Smith heard an argument between Ms. Miller and Mr. Childs. Entering the kitchen where the argument was taking place, Ms. Smith asked what was going on. Ms. Miller began to curse at Ms. Smith and stated she was going to cut Ms. Smith's eye out. Ms. Miller then ran to her room and retrieved a large butcher knife with an approximately eight-inch blade and a black handle. Ms. Miller returned, waved the knife around, and said "I'll fuck you up," and "I'm going to get your ass, bitch." Ms. Smith was scared and upset.

Ms. Smith called the police. A Metropolitan Police Department (MPD) officer responded to the house and spoke with Ms. Miller. Ms. Miller told the officer that she and Ms. Smith had a verbal argument, but Ms. Miller denied wielding a

knife. The officer performed a consensual search of Ms. Miller's room and found a knife with a black handle in plain view. Mr. Childs identified that knife as the knife Ms. Miller had wielded earlier. An MPD detective interviewed Ms. Smith. Ms. Smith told the detective that Ms. Miller had pulled a knife on her. Mr. Childs corroborated Ms. Smith's statement.

The defense evidence was as follows. Ms. Miller testified that on the day of the incident she was talking to Mr. Childs in the kitchen, that Mr. Childs threatened her, and that she was afraid of him. She did not bring out a knife during the argument or threaten anyone with a knife. She keeps cooking knives in her room because she does not want them to go missing and because of roaches and mice. John Osanyingbemi, another resident of 3552 Warter Street, also testified. He testified that he saw the argument in the kitchen and that no one was holding any weapons or objects. Mr. Osanyingbemi told Ms. Miller, Mr. Childs, and Ms. Smith to stop arguing, and the group dispersed.

## II.

Ms. Miller contends that the evidence was insufficient to support her convictions. We disagree.

When assessing the sufficiency of the evidence, we "view the evidence in the light most favorable to the [verdict], giving full play to the right of the fact-finder to determine credibility, weigh the evidence, and draw justifiable inferences of fact." *Cherry v. District of Columbia*, 164 A.3d 922, 929 (D.C. 2017) (internal quotation marks omitted). The evidence is sufficient if, "after viewing it in the light most favorable to the [verdict], *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Smith v. United States*, 55 A.3d 884, 887 (D.C. 2012) (internal quotation marks omitted).

Ms. Miller challenges the trial court's decision to credit the testimony of Ms. Smith and Mr. Childs over the testimony of the defense witnesses. Credibility, however, "is determined by the trier of fact, . . . and this court must defer to its credibility findings if they are supported by the evidence." *Bryant v. United States*, 859 A.2d 1093, 1102 n.13 (D.C. 2004). We discern no basis to reject the credibility determinations of the factfinder on this record.

## III.

Ms. Miller argues that attempted threats is not a legally cognizable offense. This court, however, has held otherwise. *Jones v. United States*, 124 A.3d 127, 129-31 (D.C. 2015) (reaffirming that "attempted threats is a valid offense in the District"). Although Ms. Miller contends that our prior decisions are wrong, it is "fundamental in our jurisprudence that no division of this court will overrule a prior decision of this court." *Washington v. Guest Servs., Inc.*, 718 A.2d 1071, 1075 (D.C. 1998) (internal quotation marks omitted).

## IV.

Finally, Ms. Miller argues that she had a constitutional right to a jury trial, because she was tried for offenses that legally authorize her removal from the United States. Ms. Miller concedes that she did not request a jury trial and that her claim is therefore subject to review under the plain-error standard. "Under the test for plain error, an appellant must show (1) error, (2) that is plain, and (3) that affected [the appellant's] substantial rights." *Fortune v. United States*, 59 A.3d 949, 954 (D.C. 2013) (internal quotation marks omitted). "Even if all three of these conditions are met, this court will not reverse unless (4) the error seriously affects the fairness,

integrity, or public reputation of judicial proceedings." *Id.* (internal quotation marks omitted). Applying that standard, we vacate Ms. Miller's convictions.

**A.**

Ms. Miller's immigration status was not raised before the trial court, and the trial record does not shed light on that status. On appeal, both parties have proffered information concerning Ms. Miller's status. The United States has raised no objection to our consideration of undisputed information about Ms. Miller's status. For current purposes, it suffices to say that there is no dispute that (1) Ms. Miller was born in Nigeria; (2) Ms. Miller came to the United States in 1998; (3) Ms. Miller is not a United States citizen; (4) at the time of trial in this case, Ms. Miller had no established legal right to remain in the United States and no pending request seeking to establish such a right; (5) because Ms. Miller and Ms. Smith lived in the same home, the offenses of conviction are crimes of domestic violence that would provide a legal basis upon which Ms. Miller could be removed from the United States pursuant to 8 U.S.C. § 1227(a)(2)(E) (2017); and (6) although Ms. Miller at one point submitted an asylum request, she has since withdrawn that request in exchange for an agreement that the United States would not oppose a grant of withholding of removal. "Withholding of removal . . . confers only the right not to be deported to

a particular country—not a right to remain in this one." *Abdulai v. Ashcroft*, 239 F.3d 542, 545 (3d Cir. 2001).

**B.**

We turn first to whether the failure to provide Ms. Miller with a jury trial is obvious error. Although *Bado* had not been decided at the time of the trial in this case, we must take *Bado* into account in determining whether there is obvious error. *See, e.g.*, *Haye v. United States*, 67 A.3d 1025, 1030 (D.C. 2013) ("An error is plain if it is clear or obvious at the time of appeal."). We conclude that the failure to provide Ms. Miller with a jury trial is obvious error in light of *Bado*.

*Bado* is explicit as to the scope of its holding: "Our holding today is clear: the Sixth Amendment entitles a defendant to a jury trial if [the defendant] is charged with a deportable offense . . . ." 186 A.3d at 1260. The United States does not dispute that Ms. Miller was charged with deportable offenses. Our holding in *Bado* by its plain terms therefore entitles Ms. Miller to a jury trial. We are not persuaded by the United States's contrary arguments.

Although the trial record did not reveal that Ms. Miller is not a citizen, the United States has not relied on that circumstance to argue that the error in this case was not obvious for purposes of the plain-error standard. We therefore do not address that issue. The United States does argue, however, that *Bado* could reasonably be read more narrowly, to afford a jury trial right to a noncitizen charged with a deportable offense only if the noncitizen had a preexisting right to remain in the United States. We disagree.

First, Mr. Bado apparently did not have a preexisting right to remain in the United States at the time of his criminal trial. *Bado*, 186 A.3d at 1247. Rather, his petition for asylum was pending at the time of his criminal trial. *Id.* The United States's proposed reading of *Bado* thus is directly inconsistent with our holding that Mr. Bado had a constitutional right to jury trial.

Second, the United States's proposed reading of *Bado* appears to rest on the premise that a defendant has a constitutional right to a jury trial only if conviction would in a practical sense make the defendant's situation worse than it otherwise would be. *Bado*, however, repeatedly states that the relevant inquiry is whether the defendant "faces" or "is exposed" to the penalty at issue, or alternatively whether the penalty "could be" imposed, if the defendant is convicted. *E.g.*, 186 A.3d at

1246, 1249-50, 1252, 1253, 1256, 1257, 1261. *Bado*'s language reflects the well-settled principle that whether there is a Sixth Amendment right to a jury trial turns on the "maximum *authorized* penalty." *Blanton v. City of N. Las Vegas*, 489 U.S. 538, 541 (1989) (emphasis added and internal quotation marks omitted). The focus is on the maximum authorized penalty because the existence of a Sixth Amendment right to a jury trial as to a charged offense turns on whether the offense is serious or petty, which in turn depends on whether the maximum penalty authorized for the offense reflects a legislative judgment that the offense is serious. *Id.* at 541-42. Thus, for example, any defendant charged with an offense punishable by up to a year in jail has a right to a jury trial, because the legislative decision to authorize so severe a punishment demonstrates categorically that the offense is serious rather than petty. *Id.* at 542-43. Under this analysis, it is not relevant what sentence a particular defendant actually receives, much less what sentence a particular defendant might be thought likely to receive or what the practical impact of a sentence might be on a particular defendant. *Cf., e.g.*, *Lewis v. United States*, 518 U.S. 322, 328-29 (1996) (with exception of criminal contempt, which presents unique concerns, existence of Sixth Amendment right to jury trial does not turn on punishment actually imposed). It follows logically that a defendant who is already serving multiple life sentences without possibility of parole would have a Sixth Amendment right to a jury trial if charged with an offense punishable by up to a year in jail, even though it could be

said that the defendant no longer had a right to be free from incarceration and that a further conviction would not have a significant practical impact on the defendant. In our view, the same is true where a defendant is charged with a deportable offense but may be subject to deportation on other grounds.

It is true that a defendant is not entitled to a jury trial based on penalties that are legally unavailable to be imposed on that defendant. *E.g.*, *Blanton*, 489 U.S. at 545 n.12 (in determining whether defendants who were first-time offenders had Sixth Amendment right to jury trial, court did not consider higher penalties applicable to repeat offenders); *Bado*, 186 A.3d at 1256 ("[W]hat is relevant to the Sixth Amendment analysis are the potential penalties to which the particular defendant is exposed upon conviction."). But that is quite different from tying the Sixth Amendment right to a jury trial to a defendant-specific inquiry into the practical consequences of a conviction. As we said in *Bado*, in addressing a somewhat different argument, we see no basis to "engraft additional requirements to the factors set out by the [Supreme] Court that are not relevant *to Blanton*'s focus on the potential penalties that are faced by the accused individual." 186 A.3d at 1257.

## C.

Under the third part of the plain-error test, Ms. Miller must show that the erroneous denial of her Sixth Amendment right to a jury trial affected her substantial rights. *Fortune*, 59 A.3d at 954. The United States acknowledges that this court has previously held that, because denial of the Sixth Amendment right to a jury trial is a structural error, when that right is denied "the defendant's substantial rights will be deemed to have been affected, without need for further analysis in the context of the particular trial." *Id.* at 956 (internal quotation marks omitted). In a footnote, however, the United States suggests in passing that this holding has been abrogated by the Supreme Court's decision in *Weaver v. Massachusetts*, 137 S. Ct. 1899 (2017) (prejudice is not presumed when defendant claims that defense counsel was constitutionally ineffective in failing to object to denial of right to public trial). We do not consider the United States's footnote to have sufficiently raised the argument that our prior holding has been invalidated. *See Graham v. United States*, 12 A.3d 1159, 1165 n.9 (D.C. 2011) ("It is not enough merely to mention a possible argument in the most skeletal way, leaving the court to do counsel's work, create the ossature for the argument, and put flesh on its bones . . . .") (internal quotation marks omitted). We thus conclude that Ms. Miller has satisfied the third part of the plain-error test.

**D.**

Under the fourth part of the plain-error test, Ms. Miller must show that the error "seriously affects the fairness, integrity, or public reputation of judicial proceedings." *Fortune*, 59 A.3d at 954 (internal quotation marks omitted). We conclude that Ms. Miller has made the required showing.

The Supreme Court has repeatedly emphasized the critical importance of the Sixth Amendment right to a jury trial. *See, e.g.*, *Apprendi v. New Jersey*, 530 U.S. 466, 477 (2000) (describing right to jury trial as "the great bulwark of our civil and political liberties") (brackets and internal quotation marks omitted). It therefore should not be surprising that this court has on several occasions held that the erroneous denial of that right seriously affected the fairness, integrity, or public reputation of judicial proceedings and warranted reversal under the plain-error standard. *See, e.g.*, *Long v. United States*, 83 A.3d 369, 383-84 (D.C. 2013) (where trial judge unconstitutionally enhanced sentence based on findings made by trial judge rather than by jury, error resulted in "lack of fairness" warranting reversal under plain-error standard); *Fortune*, 59 A.3d at 957 (where trial judge unconstitutionally found defendant guilty of offense as to which defendant had Sixth

Amendment right to jury, and trial judge's verdict was inconsistent with jury verdict on related counts, allowing trial judge's unconstitutional verdict to stand would adversely affect fairness and integrity of judicial proceedings). Other courts have reached the same conclusion in various circumstances. *See, e.g.*, *People v. Gatlin*, 82 N.E.3d 584, 593, 587 (Ill. App. Ct. 2017) ("It is well settled that, when a defendant's right to a jury trial has been violated, such an error may be deemed" to warrant reversal under the plain-error standard, because the error was "so serious that it affected the fairness of the defendant's trial and challenged the integrity of the judicial process . . . .") (internal quotation marks omitted); *State v. Gomez-Lobato*, 312 P.3d 897, 909 n.13 (Haw. 2013) ("Because of the fundamental constitutional nature of the right to a jury trial, this court has held that the failure to waive a jury trial" warrants reversal under the plain-error standard.).

We do not mean to suggest that the fourth part of the plain-error test will always be satisfied if a defendant has been denied a jury-trial right under the Sixth Amendment. To the contrary, both the Supreme Court and this court have held that failing to submit an element of the charged offense to the jury, in violation of the Sixth Amendment right to have the jury decide all of the elements of the offense, will not warrant reversal under the plain-error standard if the evidence as to the omitted element was overwhelming and essentially uncontested. *Johnson v. United*

*States*, 520 U.S. 461, 469-70 (1997); *Bellamy v. United States*, 810 A.2d 401, 406-07 (D.C. 2002); *see generally United States v. Gaudin*, 515 U.S. 506, 511 (1995) (Sixth Amendment "gives a criminal defendant the right to demand that a jury find him guilty of all the elements of the crime with which he is charged").  We do hold, though, that barring unusual circumstances not present in this case, the erroneous denial of the Sixth Amendment right to a jury trial seriously affects the fairness, integrity, or public reputation of judicial proceedings.

The United States argues that special circumstances in this case support a conclusion that any error did not seriously affect the fairness, integrity, and public reputation of judicial proceedings.  Specifically, the United States argues that Ms. Miller is subject to deportation on other grounds, that the United States has not up to this point relied upon the convictions in this case as a basis to deport Ms. Miller, and that in fact Ms. Miller has been granted withholding of removal.  We are not persuaded that these circumstances justify affirmance.  As the United States acknowledged at oral argument, it remains possible that Ms. Miller could be required to leave the United States based on her convictions in this case.  Moreover, as we have explained, Ms. Miller's Sixth Amendment right to a jury trial depended on the penalties she faced at the time of trial, not on what penalties thereafter were or might be imposed upon her.  Thus, for example, consider a case in which a defendant

charged with murder is unconstitutionally given a bench trial rather than a jury trial. In our view, that error would seriously affect the fairness, integrity, or public reputation of judicial proceedings even if the defendant were later sentenced to probation or a minimal period of incarceration. We reach the same conclusion in the present case.

For the foregoing reasons, the judgment of the Superior Court is vacated and the case is remanded for further proceedings.

*So ordered.*