Concurring opinion by Senior Judge Washington, at page 1262.
 

 Concurring opinion by Associate Judge Thompson, at page 1266.
 

 Dissenting opinion by Associate Judge Glickman, with whom Associate Judge Fisher joins, at page 1270.
 

 Dissenting opinion by Associate Judge Fisher, with whom Associate Judge Glickman joins, at page 1271.
 

 Ruiz, Senior Judge:
 

 Jean-Baptiste Bado appeals his conviction for misdemeanor sexual abuse of a minor, after a bench trial, on the ground that he was denied the right to a jury trial guaranteed by the Sixth Amendment. The court, sitting en banc, is asked to decide whether the Sixth Amendment guarantees a right to a jury trial to an accused who faces the penalty of removal/deportation
 
 [1]
 
 as a result of a criminal conviction for an offense that is punishable by incarceration for up to 180 days. By itself, that period of incarceration does not puncture the six-month line past which an offense is deemed "serious" and jury-demandable. We hold that the penalty of
 deportation, when viewed together with a maximum period of incarceration that does not exceed six months, overcomes the presumption that the offense is petty and triggers the Sixth Amendment right to a trial by jury. The conviction is reversed and the case remanded for a jury trial.
 

 I.
 

 Appellant Jean-Baptiste Bado came to the United States on February 8, 2005, from Burkina Faso, where he was a pastor, fleeing at the time from "systematic[ ] prosecut[ion] and torture[ ]for his political and religious beliefs." Once in this country, he filed an application for asylum. His asylum proceeding continued for several years. It was halted in 2011, however, when he was charged by information with three counts of misdemeanor sexual abuse of a minor
 
 [2]
 
 because, if convicted, under U.S. immigration law he would be barred from receiving political asylum
 
 [3]
 
 and removed from the United States.
 
 [4]
 
 Appellant pleaded not guilty and demanded a jury trial, which was denied. At the bench trial, appellant took the stand and contradicted the charges, calling into question the complainant's credibility. He was acquitted of two of the charges but convicted of one count. He was sentenced to 180 days and ordered to pay $50 to the Crime Victims Compensation Program Fund and register as a sex offender for ten years. The United States commenced deportation proceedings on the basis of the conviction.
 

 On appeal, a divided panel of the court reversed the conviction after concluding that appellant's right to a jury trial had been violated.
 
 Bado v. United States
 
 ,
 
 120 A.3d 50
 
 , 52 (D.C. 2015). On granting the government's petition for rehearing en banc, the division's opinions were vacated.
 
 Bado v. United States
 
 ,
 
 125 A.3d 1119
 
 (D.C. 2015). After a further round of briefing by the parties and amici curiae, and oral argument, we now hold that appellant has a constitutional right to a jury trial. Therefore, we reverse his conviction and remand the case to permit appellant to have a trial free from structural error
 
 [5]
 
 and to receive the "basic protection" of a trial before a jury.
 
 Sullivan v. Louisiana
 
 ,
 
 508 U.S. 275
 
 , 281-82,
 
 113 S.Ct. 2078
 
 ,
 
 124 L.Ed.2d 182
 
 (1993).
 
 [6]
 

 II.
 

 The Sixth Amendment guarantees a bundle of trial rights to the accused in
 "all criminal prosecutions." U.S. CONST. amend. VI. The first of these is "the right to a speedy and public trial, by an impartial jury ...."
 

 Id.
 

 [7]
 
 The Supreme Court has interpreted the scope of the jury trial right, in the light of the common law, as applying to criminal prosecutions for "serious offenses."
 
 Duncan v. Louisiana
 
 ,
 
 391 U.S. 145
 
 , 157-58,
 
 88 S.Ct. 1444
 
 ,
 
 20 L.Ed.2d 491
 
 (1968). Criminal prosecutions for offenses that are not serious, but deemed to be "petty," may be tried by a judge without violating the Sixth Amendment.
 

 The Supreme Court has set the parameters of what constitutes a "serious" offense under the Sixth Amendment. It is settled that any offense "where imprisonment for more than six months is authorized" cannot be considered "petty" for purposes of the right to trial by jury.
 
 Baldwin v. New York
 
 ,
 
 399 U.S. 66
 
 , 67, 69-70,
 
 90 S.Ct. 1886
 
 ,
 
 26 L.Ed.2d 437
 
 (1970) (noting that the distinction between "felonies" and "misdemeanors" is not the constitutional dividing line and that some misdemeanors, such as "jostling,"
 
 [8]
 
 are deemed serious offenses). In
 
 Blanton v. City of N. Las Vegas
 
 ,
 
 489 U.S. 538
 
 , 541-42,
 
 109 S.Ct. 1289
 
 ,
 
 103 L.Ed.2d 550
 
 (1989), the Court set out the analytical framework to determine whether a particular offense punishable by incarceration for six months or less is to be deemed "serious," triggering the constitutional right to a jury trial, or "petty," leaving the question of a jury trial to resolution under other applicable law.
 
 [9]
 
 Noting
 that the maximum exposure to incarceration is usually the clearest indicator of the seriousness of an offense, the Court, following
 
 Baldwin's
 
 lead, stated that offenses with a maximum period of incarceration of six months are "presum[ptively] ... petty."
 

 Id.
 

 at 543
 
 ,
 
 109 S.Ct. 1289
 
 . The Court, however, declined to hold that all such offenses "automatically qualif[y] as [ ] 'petty' offense[s]," and established that the presumption can be overcome "if [the accused] can demonstrate that any additional statutory penalties, viewed in conjunction with the maximum authorized period of incarceration, are so severe that they clearly reflect a legislative determination that the offense in question is a 'serious' one."
 

 Id.
 

 In
 
 Blanton
 
 the Court applied that test to a conviction for driving under the influence by assessing the statutorily authorized penalties that could be imposed upon conviction for DUI: incarceration from a minimum of two days to a maximum of six months, or, alternatively, 48 hours of community service dressed in clothing identifying the convicted defendant as a DUI offender; a maximum penalty of $1,000; a 90-day suspension of a driver's license; and mandatory attendance at an alcohol abuse education course at the offender's expense.
 
 489 U.S. at 539, 544-45
 
 ,
 
 109 S.Ct. 1289
 
 . The Court made clear that, in evaluating the seriousness of the offense, it considered the "
 
 maximum
 
 authorized prison sentence,"
 

 id.
 

 at 544
 
 ,
 
 109 S.Ct. 1289
 
 (emphasis in original),
 
 [10]
 
 and that it considered only those potential penalties that are actually faced by the particular defendant,
 

 id.
 

 at 545, & n.12
 
 ,
 
 109 S.Ct. 1289
 
 .
 
 [11]
 
 The Court reasoned that, because the maximum period of incarceration did not exceed six months, the offense was presumptively petty.
 

 Id.
 

 at 544
 
 ,
 
 109 S.Ct. 1289
 
 . It then "[c]onsider[ed] the additional statutory penalties."
 

 Id.
 

 Of the distinctive garb required if the person were alternatively sentenced to a short period of community service, the Court stated that, even if it were "the source of some embarrassment," it would be "less embarrassing and less onerous than six months in jail."
 

 Id.
 

 [12]
 
 The Court considered the license suspension
 and concluded it was not "that significant" as a Sixth Amendment matter, in part because the record was unclear as to whether the suspension would be concurrent with the six-month incarceration, in which case it would be "irrelevant," and because a restricted license could be obtained after forty-five days.
 
 Id.
 
 & n.9,
 
 109 S.Ct. 1289
 
 .
 
 [13]
 
 The Court dismissed the mandatory alcohol abuse education course as a "
 
 de minimis
 
 " requirement.
 
 Id.
 
 at n.9,
 
 109 S.Ct. 1289
 
 . After taking into account all of the possible maximum statutory penalties that could be applied to the defendant, the Court concluded that "[v]iewed together, the statutory penalties are not so severe that DUI must be deemed a 'serious' offense for purposes of the Sixth Amendment."
 

 Id.
 

 at 545
 
 ,
 
 109 S.Ct. 1289
 
 . The Court applied a
 
 Blanton
 
 analysis one other time, in
 
 United States v. Nachtigal
 
 , another case that involved operating a motor vehicle while intoxicated.
 
 507 U.S. 1
 
 , 2,
 
 113 S.Ct. 1072
 
 ,
 
 122 L.Ed.2d 374
 
 (1993). The possibility of a five-year probation and $5,000 fine did not convert the presumptively petty offense to a serious one for jury trial purposes, the Court held, because they did not approximate or entail as great a loss of liberty as the possibility of imprisonment for more than six months.
 

 Id.
 

 at 5
 
 ,
 
 113 S.Ct. 1072
 
 .
 

 III.
 

 We apply a
 
 Blanton
 
 analysis in this case. In light of the 180-day maximum exposure to incarceration for misdemeanor sexual abuse of a minor, we begin with the presumption that the offense is "petty" for Sixth Amendment purposes. The question before us is whether the possibility of deportation refutes that presumption. We note the obvious: there is no comparison between the penalty of deportation and the statutory penalties considered in
 
 Blanton
 
 (temporary license suspension, embarrassing clothing to be worn during two days of community service, and alcohol abuse education course) that were deemed not significant enough to render the DUI offense serious under the Sixth Amendment. Like incarceration, deportation separates a person from established ties to family, work, study, and community. In this forced physical separation, it is similar "in severity [to] the loss of liberty that a prison term entails."
 
 Blanton
 
 ,
 
 489 U.S. at 542
 
 ,
 
 109 S.Ct. 1289
 
 (distinguishing probation and fines which, although they "may engender 'a significant infringement of personal freedom,' ... cannot approximate in severity the loss of liberty that a prison term entails") (internal citation omitted) (quoting
 
 Frank v. United States
 
 ,
 
 395 U.S. 147
 
 , 151,
 
 89 S.Ct. 1503
 
 ,
 
 23 L.Ed.2d 162
 
 (1969) ).
 
 Baldwin
 
 held that the possibility of a sentence in excess of six months automatically renders an offense serious under the Sixth Amendment, entitling the accused to a jury trial. Removal, however, can be more severe than the possibility of a six-month sentence of incarceration. Once the actual sentence is served (which could be for a term less than the six-month maximum, or even only probation), a U.S. citizen can return home to family and community and take steps to resume and, possibly, redirect his life. But when a person faces deportation, serving the sentence is only the first step following conviction; once the sentence is completed, the person faces the burdens and anxiety that attend detention pending removal proceedings. Upon removal,
 the physical separation from family and community lasts at least ten years and, for some, including Mr. Bado, exclusion from the country becomes permanent.
 
 [14]
 
 This disruption causes harm and suffering to those who are forced to leave and those who remain. Wrenching decisions might have to be made within the family, which could be left without an important source of emotional and financial support. Those families often include children and other family members who are United States citizens and who may be forced to leave this country to preserve familial bonds with a parent or other relative no longer able to remain in the United States, or to continue to receive their financial support.
 
 [15]
 
 For some, deportation may expose them to harsh conditions in their country of origin including extreme poverty, violence and oppression and persecution based on religious and political beliefs. As the Court has recognized, removal is considered by many immigrants to be worse than incarceration, such that "preserving the [ ] right to remain in the United States may be more important [ ] than any potential jail sentence."
 
 Lee v. United States
 
 , --- U.S. ----,
 
 137 S.Ct. 1958
 
 , 1968,
 
 198 L.Ed.2d 476
 
 (2017) (quoting
 
 Padilla
 
 , 559 U.S. at 368,
 
 130 S.Ct. 1473
 
 ).
 

 The Supreme Court has "long recognized that deportation is a particularly severe 'penalty,' " equating it to "banishment."
 
 Padilla
 
 , 559 U.S. at 365, 373,
 
 130 S.Ct. 1473
 
 (quoting
 
 Fong Yue Ting v. United States
 
 ,
 
 149 U.S. 698
 
 , 740,
 
 13 S.Ct. 1016
 
 ,
 
 37 L.Ed. 905
 
 (1893) );
 
 see, e.g.
 
 ,
 
 Fong Haw Tan v. Phelan
 
 ,
 
 333 U.S. 6
 
 , 10,
 
 68 S.Ct. 374
 
 ,
 
 92 L.Ed. 433
 
 (1948) ("[D]eportation is a drastic measure and at times the equivalent of banishment or exile.");
 
 Fong Yue Ting
 
 ,
 
 149 U.S. at 740
 
 ,
 
 13 S.Ct. 1016
 
 (Brewer, J., dissenting) ("Every[ ]one knows that to be forcibly taken away from home, and family, and friends, and business, and property, and sent across the ocean to a distant land, is punishment; and that oftentimes most severe and cruel."). Removal that results from conviction erects a bar to entry into the United States,
 
 [16]
 
 with all the grave consequences that preclusion entails: loss of our country's constitutional protections, the ability to engage with its social institutions, and access to educational and economic opportunities. These are the cherished values that have beckoned to people in other lands since our country's founding and continue to provide hope for those seeking a better life and refuge for those escaping violence and persecution. Their loss is so great as to be unquantifiable. The loss of liberty, akin to incarceration, that results from removal as well as the Court's repeated
 statements about its severity, lead us to conclude, under a
 
 Blanton
 
 analysis, that deportation is so "onerous" a penalty for conviction that it presents the "rare situation" that should ensure the availability of a jury trial in a criminal proceeding even though the penalty of incarceration does not "puncture the six-month incarceration line."
 
 Blanton
 
 ,
 
 489 U.S. at 543
 
 ,
 
 109 S.Ct. 1289
 
 .
 

 IV.
 

 The government agrees that, under
 
 Blanton
 
 , there is a two-step analysis: (1) identification of the penalties for conviction of an offense, and (2) an evaluation of whether the penalties, viewed together, are sufficiently severe to warrant a jury trial by comparison to the possibility of imprisonment for more than six months, which the Court has established (when considering only incarceration) as the constitutional dividing line between petty and serious offenses. The government does not dispute that deportation is a severe penalty. The government's arguments boil down to one contention, that deportation is not the type of penalty that
 
 Blanton
 
 contemplated should be taken into account in determining whether an offense is deemed serious under the Sixth Amendment. Specifically, the government contends that: (1) removal is not a penalty for a criminal offense; (2) removal should not be considered because it is imposed by Congress, not the Council of the District of Columbia, which created the offense; (3) longstanding precedent establishes that deportation is not "punishment"; and (4) the courts of the District of Columbia are not competent to determine the deportation consequence of criminal conviction. As we now discuss, we are not persuaded by the government's arguments to diverge from a straightforward application of a
 
 Blanton
 
 analysis that includes the penalty of deportation.
 

 A. Deportation is a Penalty for a Criminal Conviction
 

 As the Court has recognized, "[o]ur law has enmeshed criminal convictions and the penalty of deportation for nearly a century."
 
 Padilla
 
 , 559 U.S. at 365-66,
 
 130 S.Ct. 1473
 
 . In this case, there is no dispute that the offense of misdemeanor sexual abuse of a minor exposes appellant to removal. Appellant had been in proceedings seeking asylum that were terminated pending his criminal trial because, if convicted, he would be ineligible for asylum and deported.
 
 [17]
 
 The government sought to deport him upon his conviction. The government argues, however, that removal, even if it is triggered by a criminal conviction, is a "civil" sanction that should not be considered in a
 
 Blanton
 
 analysis. We disagree. As
 
 Blanton
 
 emphasized, whether the Sixth Amendment guarantees a jury trial is determined by reference to the possible statutory "penalties" that "attach[ ] to" conviction of the offense:
 

 In using the word "penalty," we do not refer solely to the maximum prison term authorized for a particular offense. A legislature's view of
 
 the seriousness of an offense also is reflected in the other penalties that it attaches to the offense
 
 . We thus examine "whether the length of the authorized prison term
 
 or the seriousness of other punishment
 
 is enough in itself to require a jury trial."
 

 489 U.S. at 542
 
 ,
 
 109 S.Ct. 1289
 
 (first emphasis added and internal citation omitted) (quoting
 
 Duncan
 
 ,
 
 391 U.S. at 161
 
 ,
 
 88 S.Ct. 1444
 
 ). The Court did not parse whether "the other penalties" were "penal" or "civil" in nature, and took care to consider the relative burdens imposed by each of several penalties that were "civil" in nature:
 

 temporary license suspension, 48 hours of community service, a fine, and required attendance at an alcohol abuse education course.
 
 Id.
 
 at 543-44,
 
 109 S.Ct. 1289
 
 . We see no foothold in
 
 Blanton
 
 for the distinction the government urges in this appeal.
 

 Reprising the "civil" versus "penal" point, the government argues that removal resulting from conviction is merely the prescribed remedy in a regulatory-type proceeding that enforces provisions in the immigration laws that define who is permitted to stay in the country.
 
 [18]
 
 No one doubts that the government has the power to deport persons, so long as it is exercised pursuant to statutory authority and consistent with the Constitution. That is not the issue here. In this case, we are concerned with the constitutional rights guaranteed to the accused under the Sixth Amendment in a criminal prosecution that could result in deportation. The government's argument that deportation, as a civil penalty, is not relevant to our inquiry is refuted by
 
 Blanton
 
 , where the Court considered the possible penalty of license suspension following conviction for DUI relevant in deciding whether the Sixth Amendment guarantees that apply to criminal prosecutions required a jury trial. A license can be suspended, even in the absence of conviction, for purely regulatory reasons such as failure to renew or driving without prescribed vision correction, just as a person may be subject to removal for violating the terms of admission absent a criminal conviction. Yet, in
 
 Blanton
 
 , the Court took into account the possibility of a license suspension as part of its Sixth Amendment analysis because the statute provided that suspension of licensing privileges was a penalty for a DUI conviction. Similarly here, a statutory provision imposes deportation as a penalty for conviction.
 

 Moreover, the argument that characterizes deportation as a "non-criminal" sanction is at odds with (and relies on cases that precede) current law and practice under the 1996 amendments to the Immigration and Naturalization Act ("INA")
 
 [19]
 
 which provide that removal proceedings are triggered by conviction of a number of state and federal offenses. Cognizant of
 these changes in the law, the Court has soundly rejected the notion that removal is merely a collateral consequence of criminal conviction, distinct from a criminal penalty, and has instead recognized that "as a matter of federal law, deportation is an integral part-indeed, sometimes the most important part-of the penalty that may be imposed on noncitizen defendants."
 
 Padilla
 
 , 559 U.S. at 364,
 
 130 S.Ct. 1473
 
 . The "drastic measure of deportation or removal is now virtually inevitable for a vast number of noncitizens convicted of crimes."
 
 Id.
 
 at 360,
 
 130 S.Ct. 1473
 
 (internal citation and quotation omitted). To characterize deportation in a case like this as merely a civil remedy separate from the penalty for conviction is not only contrary to
 
 Blanton's
 
 analysis; it also flies in the face of the Court's repeated statements in recent opinions that the penalty of removal plays a central role in criminal proceedings involving noncitizens.
 
 See
 

 Sessions v. Dimaya
 
 , 584 U.S. ----,
 
 138 S.Ct. 1204
 
 , 1213,
 
 200 L.Ed.2d 549
 
 (2018) ("[A]s federal immigration law increasingly hinged deportation orders on prior convictions, removal proceedings became ever more 'intimately related to the criminal process.' " (quoting
 
 Chaidez v. United States
 
 ,
 
 568 U.S. 342
 
 , 352,
 
 133 S.Ct. 1103
 
 ,
 
 185 L.Ed.2d 149
 
 (2013) (in turn quoting
 
 Padilla
 
 , 559 U.S. at 365,
 
 130 S.Ct. 1473
 
 ) ). The civil/criminal distinction the Court said in
 
 Padilla
 
 is "ill suited" to evaluating a Sixth Amendment claim of ineffective assistance of counsel,
 
 Padilla
 
 at 366,
 
 130 S.Ct. 1473
 
 , is equally ill-suited to evaluating a claim to a jury trial, which is another in the group of rights guaranteed by the Sixth Amendment to the accused in a criminal prosecution.
 
 [20]
 

 Cf.
 

 Dimaya
 
 , 584 U.S. at ----,
 
 138 S.Ct. at 1212-13
 
 (noting government's civil/criminal distinction and rejecting the argument that because deportation is a civil sanction, a less searching standard should apply in a due process evaluation of a void-for-vagueness challenge under the Fifth Amendment).
 

 Finally, the argument that deportation is simply a civil measure also overlooks that harsher substantive and procedural requirements apply when deportation is triggered by a criminal conviction than in "regulatory" deportations, such as when a person is out of status (
 
 e.g
 
 ., a person who is working without authorization or enters on a student visa and is no longer in school). Those who are removed as a result of a criminal conviction are ineligible for reentry for a longer period or permanently barred,
 
 [21]
 
 they are more likely to be detained pending removal proceedings, and, once a removal order has been entered, they are also streamlined through expedited removal proceedings, subjected to additional periods of detention, and extremely limited in their eligibility for relief from deportation.
 
 [22]
 
 These harsher provisions are
 not generally applicable, nor are they triggered by any circumstance other than the conviction of a crime (or admission of criminal behavior) and, thus, distinguish removal upon conviction from regulatory removals. As the Court has observed, once a noncitizen has been convicted of a removable offense, detention and removal are "practically inevitable but for the possible exercise of limited remnants of equitable discretion vested in the Attorney General."
 
 Padilla
 
 , 559 U.S. at 363-64,
 
 130 S.Ct. 1473
 
 . Exercise of these "limited remnants" of executive discretion is rare as the government's enforcement policies have prioritized the removal of persons who have been convicted of crimes, ensuring that they are much more likely to be deported than others who could be removed as part of the regulatory process.
 
 [23]
 

 The government argues that removal should not be considered a penalty in a
 
 Blanton
 
 analysis because (1) the sentencing court does not have authority to order deportation upon conviction for a deportable offense
 
 [24]
 
 and (2) there would
 be an "anomaly" if a noncitizen would be entitled to a jury trial but a citizen would not. Neither of these is a factor whose relevance can be gleaned from
 
 Blanton
 
 , which focused on the possible penalties faced by the accused claiming the right to demand a jury trial, without regard to the mechanics by which the penalty is imposed. For example, the Court's consideration of the license suspension for the DUI conviction in
 
 Blanton
 
 was not dependent on whether it was imposed by the sentencing court.
 
 489 U.S. at 539
 
 ,
 
 109 S.Ct. 1289
 
 (citing
 
 Nev. Rev. Stat. § 483.460
 
 (1)(c) ) (noting that suspension occurred "automatically"). Moreover, by expressly declining to consider other enhanced penalties that were not faced by the accused individual,
 

 id.
 

 at 545 n.12,
 
 109 S.Ct. 1289
 
 ,
 
 Blanton
 
 made clear that what is relevant to the Sixth Amendment analysis are the potential penalties to which the particular defendant is exposed upon conviction.
 
 [25]
 
 In an analogous circumstance, we have rejected a claim that an enhanced penalty for recidivism triggers a jury trial right where the defendant was not "personally" facing the penalty.
 
 See
 

 Brown v. United States
 
 ,
 
 675 A.2d 953
 
 , 954 (D.C. 1996). Thus, because citizens can never be deported, it is hardly anomalous that
 
 Blanton's
 
 penalty-oriented Sixth Amendment analysis could render a different result for citizens than for noncitizens who face the additional, and concededly serious, penalty of deportation.
 
 [26]
 
 Similarly, it would not be anomalous if one citizen who faces a more severe penalty such as a greater period of incarceration for a repeat offense is entitled to a jury trial whereas another citizen who faces lesser penalties is not.
 
 [27]
 
 The government
 offers no compelling reason why we should engraft additional requirements to the factors set out by the Court that are not relevant to
 
 Blanton's
 
 focus on the potential penalties that are faced by the accused individual. If, viewed together with the maximum period of incarceration, the penalties' severity is comparable to a prison sentence of more than six months, the Sixth Amendment entitles the accused to a jury trial.
 
 [28]
 

 B. Congress Has Imposed the Deportation Penalty for Criminal Conviction
 

 The government further argues that removal that is triggered by a criminal conviction should not be taken into account because it is a penalty that results from a congressional enactment and is not part of the penalty designated by the legislature that created the offense, in this case, the Council of the District of Columbia. This argument misapprehends
 
 Blanton
 
 's meaning and is contrary to its purpose.
 
 [29]
 
 In
 
 Blanton
 
 , the Court rejected the notion that a court may gauge the seriousness of an offense for Sixth Amendment purposes by coming to a subjective judgment about the "nature" of the offense.
 
 489 U.S. at 541-42, & n.5
 
 ,
 
 109 S.Ct. 1289
 
 . Instead, the seriousness of an offense is to be assessed by reference to objective standards-penalties-"resulting from state action,
 
 e.g.
 
 , those mandated by statute or regulation."
 

 Id.
 

 at 543 n.8,
 
 109 S.Ct. 1289
 
 . Through the penalties mandated by public officials and elected representatives, "the laws and practices of the community [are] taken as a gauge of its social and ethical judgments."
 

 Id.
 

 at 541 n.5,
 
 109 S.Ct. 1289
 
 (citing
 
 District of Columbia v. Clawans
 
 ,
 
 300 U.S. 617
 
 , 628,
 
 57 S.Ct. 660
 
 ,
 
 81 L.Ed. 843
 
 (1937) ).
 
 [30]
 
 Congress, as the national legislature, is presumed to reflect the nation's social and ethical judgments; moreover, it is the only legislative body that can prescribe the penalty of removal for a criminal conviction.
 
 See
 

 United States v. Arizona
 
 ,
 
 641 F.3d 339
 
 , 349 (9th Cir. 2011),
 
 partially rev'd on other grounds
 
 ,
 
 567 U.S. 387
 
 ,
 
 132 S.Ct. 2492
 
 ,
 
 183 L.Ed.2d 351
 
 (2012) ("[R]emoval is exclusively the purview of the federal government.") ) That penalty is triggered by conviction of an offense that falls within offense classifications identified by Congress in the INA, regardless of whether the conviction results from violations of federal, state, or District of Columbia law.
 
 [31]
 
 There is no reason grounded in the purpose of
 
 Blanton's
 
 penalty-based analysis to exclude from Sixth Amendment consideration the serious penalty of removal that attaches to a criminal conviction, and to which the accused is exposed, because it has been imposed by Congress rather than the local legislature.
 
 [32]
 

 C. Principles Applicable to Constitutional Provisions Other Than the Sixth Amendment Right to Jury Trial
 

 The government points to cases holding that deportation is not "punishment" for a crime and argues that
 
 Padilla's
 
 acknowledgement that it is a serious penalty central to a criminal conviction did not
 
 sub silentio
 
 overrule them. The cases on which the government relies are not on point because they did not present a Sixth Amendment claim, but arose under different constitutional provisions, the Double Jeopardy Clause of the Fifth Amendment, U.S. CONST. amend. V, and the Ex Post Facto Clause,
 

 id.
 

 , art. I, § 10. This is a significant difference. Because the Constitution's text is silent as to how these Clauses are to be applied, the Court has ruled that the question turns on whether a law "retroactively alter[s] the definition of [a] crime[ ] or increase[s] the punishment for criminal acts,"
 
 Collins v. Youngblood
 
 ,
 
 497 U.S. 37
 
 , 43,
 
 110 S.Ct. 2715
 
 ,
 
 111 L.Ed.2d 30
 
 (1990) (Ex Post Facto Clause); or whether the state is "punishing twice, or attempting a second time to punish criminally, for the same offense,"
 
 Helvering v. Mitchell
 
 ,
 
 303 U.S. 391
 
 , 399,
 
 58 S.Ct. 630
 
 ,
 
 82 L.Ed. 917
 
 (1938) (Double Jeopardy Clause). The threshold question of whether either of these Clauses applies in a particular case therefore depends on whether the law or government action under judicial review involves a criminal offense or punishment for a crime.
 
 [33]
 
 There is no similar threshold question here, however, because the Sixth Amendment by its terms applies to "all criminal prosecutions," U.S. CONST. amend. VI, and this case involves a criminal prosecution. The question before us is different, whether the penalties that attach if the criminal prosecution results in a conviction for misdemeanor sexual abuse of a minor meet the Court's definition of what constitutes a "serious" offense that would entitle the accused to demand that the criminal prosecution be presented to, and decided by, a jury. This explains why
 
 Padilla
 
 , which also dealt with the scope of another of the Sixth Amendment rights of the accused in a criminal prosecution-the right to effective assistance of counsel-did not need to overrule any of the cases cited by the government, which arose under other constitutional provisions.
 
 [34]
 

 Padilla
 
 recognizes that deportation, even though "it is not, in a strict sense, a criminal sanction," because of its "unique nature," is nonetheless a "penalty" that is so "enmeshed" in the criminal consequences of a conviction that it triggers the right to the assistance of counsel under the Sixth Amendment. 559 U.S. at 365-66,
 
 130 S.Ct. 1473
 
 . Thus, even though it did not decide the question presented in this case,
 
 Padilla
 
 supports (and the cases on which the government relies do not undermine) that removal is a penalty to be factored in when applying the Court's penalty-oriented
 
 Blanton
 
 analysis to determine whether the accused has a Sixth Amendment right to a jury trial in a criminal prosecution.
 

 D. Practicality of Application
 

 Finally, the government asserts that there are "practicalities and uncertainties" as to whether conviction of an offense renders a defendant removable which could make application of a
 
 Blanton
 
 analysis difficult in some cases.
 
 [35]
 
 The government does not argue that any such difficulties are presented in this case, as it agrees that appellant's conviction makes him deportable.
 
 [36]
 
 Our holding today is clear: the Sixth Amendment entitles a defendant to a jury trial if he is charged with a deportable offense, even if the maximum period of incarceration does not exceed six months. The statutory basis for the deportation penalty is readily ascertainable, as the INA identifies categories of offenses that render a convicted noncitizen defendant deportable.
 
 See
 

 8 U.S.C. § 1227
 
 (a)(2) (2012).
 
 [37]
 
 There is no dearth of law on the
 subject: decisions of the Board of Immigration Appeals ("BIA"),
 
 [38]
 
 cases from other jurisdictions,
 
 [39]
 
 and guidance provided by federal agencies charged with administration of admission and exclusion of persons to the United States.
 
 [40]
 

 Even if they were not purely hypothetical here, the difficulties that the government fears may come to pass in some other case are too remote and of insufficient import to outweigh the loss of the constitutional right to a jury trial.
 
 Blanton's
 
 penalty-oriented analysis was intended to safeguard this important right where the severity of the potential penalties raises the stakes in a criminal prosecution. In a case where the prosecution and defense are in disagreement on the question of whether an accused will face the serious penalty of deportation if convicted, the trial court is not without resources to come to a sound resolution of the constitutional issue presented. Government counsel are part of the Department of Justice, which has deep expertise in immigration matters and is part of the same executive branch as the Departments of State and Homeland Security, which have responsibility for enforcing the immigration laws. Defense counsel have an obligation to advise their clients competently on the question of immigration consequences.
 
 See
 

 Padilla
 
 , 559 U.S. at 369,
 
 130 S.Ct. 1473
 
 . If necessary, the court presiding over a criminal prosecution can appoint its own expert advisor on immigration law.
 

 We do not expect this to be a common occurrence in Superior Court. Although genuine disputes about deportability might arise in an immigration proceeding, we think they will seldom occur in the context of a pretrial demand for a jury trial. It is not very likely that a defendant would challenge the government's representation in court that an offense is not deportable, or that the government would make such a representation without being confident that its position is legally correct.
 
 [41]
 
 The opposite situation, where the
 government were to assert (contrary to the defendant's view) that a charged offense is deportable, and thus, jury demandable, presents no issue as the defendant may always waive the right to a jury trial. If the trial court nonetheless must decide a jury demand based on a difficult and unsettled question of deportability, it has the obligation-as in so many other areas
 
 [42]
 
 -to decide the constitutional issue to the best of its ability.
 
 See
 

 D.C. Code § 16-705
 
 (a) (mandating that where the Constitution so requires, trial "shall be by jury" unless waived by defendant). Where a jury trial demand is made in a case with a truly vexing issue of deportability, the trial court can decide to default to recognition of the Sixth Amendment right, and avoid the risk of imperiling a conviction that may be obtained after a bench trial, should it eventually be determined that denial of the jury trial demand was based on a flawed judgment on the deportation question. The additional time required for a jury trial may well be offset by the time saved in pretrial argument. Even if some judicial efficiency might be lost, in the weighing of harms and benefits on a constitutional scale, this remote possibility is not a determinative factor.
 

 ***
 

 We conclude that the penalty of deportation, when viewed together with the 180-day maximum period of incarceration for misdemeanor sexual abuse of a minor, overcomes the presumption that appellant was charged with a petty offense and triggers the Sixth Amendment right to a trial by jury. As appellant was denied his rightful demand for a jury trial, the conviction is reversed and the case is remanded for further proceedings.
 

 So ordered.
 

 Opinion for the court by Senior Judge Ruiz, with whom Chief Judge Blackburne-Rigsby, and Associate Judges Beckwith and Easterly, and Senior Judge Washington, join.
 

 "The changes to our immigration law have also involved a change in nomenclature; the statutory text now uses the term 'removal' rather than 'deportation.' "
 
 Padilla v. Kentucky
 
 ,
 
 559 U.S. 356
 
 , 364 n.6,
 
 130 S.Ct. 1473
 
 ,
 
 176 L.Ed.2d 284
 
 (2010) (quoting
 
 Calcano-Martinez v. INS
 
 ,
 
 533 U.S. 348
 
 , 350 n.1,
 
 121 S.Ct. 2268
 
 ,
 
 150 L.Ed.2d 392
 
 (2001) ). "A 'removable' individual is one whom the immigration authorities may lawfully expel from the United States; both 'deportable' and 'inadmissible' individuals are 'removable.' "
 
 Coyomani-Cielo v. Holder
 
 ,
 
 758 F.3d 908
 
 , 909 (7th Cir. 2014) (quoting
 
 Zamora-Mallari v. Mukasey
 
 ,
 
 514 F.3d 679
 
 , 687 n.2 (7th Cir. 2008) ). In this opinion, we use the terms "removal" and "deportation" interchangeably.
 

 D.C. Code § 22-3010.01
 
 (2012 Repl.).
 

 8 U.S.C. §§ 1158
 
 (b)(2)(A)(ii) & (B)(i) (2012) (denying eligibility to apply for asylum for those convicted of "particularly serious crime[s]," a definition which includes "aggravated felon[ies]");
 
 8 U.S.C. § 1101
 
 (a)(43)(A) (2012) (categorizing sexual abuse of a minor as an "aggravated felony").
 

 8 U.S.C. § 1227
 
 (a)(2)(A)(iii) (2012) (providing that a person convicted of an aggravated felony (such as sexual abuse of a minor) "is deportable").
 

 See
 

 Fortune v. United States
 
 ,
 
 59 A.3d 949
 
 , 956 (D.C. 2013) (denial of the right to a jury trial is a structural error, i.e., an error "so intrinsically harmful as to require reversal without regard to [its] effect on the particular trial's outcome").
 

 Appellant argued that he was entitled to a jury trial in light of the nature of the offense, "lasting social stigmas and inescapable societal disapproval" resulting from conviction of sexual abuse of a minor, and the combination of consequences that attend conviction of that offense: incarceration for up to 180 days, the possibility that he would be removed from the country, assessment of a monetary fine to the Crime Victims Compensation Fund, and the requirement to register as a sex offender for ten years. As we conclude that the combination of maximum incarceration of up to 180 days and possible deportation entitles appellant to a jury trial, we need not address the other grounds raised by appellant.
 

 Other rights guaranteed to the accused by the Sixth Amendment include the right "to be informed of the nature and cause of the accusation," "to be confronted with the witnesses against him," "to have compulsory process for obtaining witnesses" to present a defense, and "to have the [a]ssistance of [c]ounsel for his defen[s]e." U.S. Const. amend. VI. The right to a jury in the "[t]rial of all [c]rimes" is also guaranteed by article III of the Constitution.
 

 Id.
 

 art. III, § 2, cl. 3.
 

 The statute on jostling was enacted to curb pickpocketing.
 
 Baldwin
 
 ,
 
 399 U.S. at
 
 67 n.1,
 
 90 S.Ct. 1886
 
 . A person is guilty of jostling when that person "intentionally and unnecessarily" places a hand in the proximity of a person's pocket or handbag or "[j]ostles or crowds another person at a time when a third person's hand is in the proximity" of the same.
 
 N.Y. Penal Law § 165.25
 
 (McKinney 2016). Jostling is a Class A misdemeanor, punishable by no more than one year in jail.
 

 Id.
 

 § 70.15 (McKinney 2016).
 

 Most jurisdictions, either pursuant to state constitutions or statutory law, provide for a jury trial when a defendant faces the prospect of any period of incarceration. See Senior Judge Washington's concurrence,
 
 post
 
 at 1265 n.1;
 
 see generally
 
 David L. Hemond, Conn. Gen. Assembly, Conn. L. Revision Comm'n, Brief Review of Right in 49 States to Jury Trial for Minor Crimes (1998), https://www.cga.ct.gov/lrc/recommendations/1999% 20recommendations/JuryTrial49StatesRpt.htm.
 

 The District of Columbia is an outlier in this regard. In the District of Columbia, unless the Constitution provides otherwise, the statutory right to demand a jury trial does not apply to offenses where the maximum exposure upon conviction is 180 days or less, one day shy of the six-month constitutional marker laid down in
 
 Baldwin
 
 , or a fine or penalty of less than $1,000.
 
 D.C. Code § 16-705
 
 (b)(1)(A) (2012 Repl.);
 
 see
 

 Fretes-Zarate v. United States
 
 ,
 
 40 A.3d 374
 
 , 378 n.3 (D.C. 2012) (noting that this "distinguish[es] the District from the vast majority of the fifty states in our union [that] afford ... a right to a jury trial to anyone charged with a crime where there is a possibility of imprisonment for any period of time"). That limitation, together with the Omnibus Criminal Justice Reform Amendment Act of 1994,
 
 41 D.C. Reg. 2608
 
 , 2609-12 (codifying D.C. Law 10-151, an earlier proposal entitled the Misdemeanor Streamlining Amendment Act), which reduced the maximum period of incarceration for a number of misdemeanor offenses to 180 days, has had the intended effect of making more misdemeanor offenses triable before a judge in the District of Columbia.
 
 See
 

 Burgess v. United States
 
 ,
 
 681 A.2d 1090
 
 , 1094-95 (D.C. 1996) ("[T]he [act] ... reduced the maximum penalties for a variety of crimes so as to make them non-jury-demandable."). The crime of misdemeanor sexual abuse of a minor was enacted in 2007 and is punishable by up to 180 days in jail and a maximum fine of up to $1,000. Omnibus Public Safety Amendment Act of 2006,
 
 53 D.C. Reg. 8610
 
 , 8613, 8634-35 (codifying D.C. Law 16-306);
 
 D.C. Code § 22-3010.01
 
 (a) (2012 Repl.). Thus, the statutory right to a jury trial does not apply to this offense.
 
 See
 

 D.C. Code § 16-705
 
 (b)(1)(A). Appellant's claim to a jury trial is therefore based on the Sixth Amendment.
 

 In using maximum exposure, the Court followed
 
 Baldwin's
 
 analysis: "The
 
 possibility
 
 of a sentence exceeding six months, we determined, is 'sufficiently severe by itself' to require the opportunity for a jury trial."
 
 Blanton
 
 ,
 
 489 U.S. at 542
 
 ,
 
 109 S.Ct. 1289
 
 (emphasis added) (quoting
 
 Baldwin
 
 ,
 
 399 U.S. at
 
 69 n.6,
 
 90 S.Ct. 1886
 
 ).
 
 See
 

 Frank v. United States
 
 ,
 
 395 U.S. 147
 
 , 149,
 
 89 S.Ct. 1503
 
 ,
 
 23 L.Ed.2d 162
 
 (1969) ("In ordinary criminal prosecutions, the severity of the penalty authorized, not the penalty actually imposed, is the relevant criterion.").
 

 The Court noted that it would not consider possible enhanced incarceration for repeat offenders because the petitioners in the case were first-time offenders; it left open the question "whether a repeat offender facing enhanced penalties may state a constitutional claim because of the absence of a jury trial in a prior DUI prosecution."
 
 Blanton
 
 ,
 
 489 U.S. at
 
 545 & n.12,
 
 109 S.Ct. 1289
 
 .
 

 Even so, the Court noted that it was "hampered" in its review of the clothing requirement because the record did not contain a description of the clothing or details "as to where and when it must be worn," seemingly reserving the possibility that a fuller record that showed a highly embarrassing or onerous requirement could yield a different outcome.
 
 Blanton
 
 ,
 
 489 U.S. at
 
 545 n.10,
 
 109 S.Ct. 1289
 
 .
 

 A longer license suspension has been held to tip an otherwise presumed petty DWI offense into the serious offense category.
 
 Richter v. Fairbanks
 
 ,
 
 903 F.2d 1202
 
 , 1204 (8th Cir. 1990) (holding that "15-year license revocation, considered together with the maximum six month prison term, is a severe enough penalty to indicate that the Nebraska legislature considers third-offense DWI a serious crime").
 

 A person who is deportable as a result of conviction for any crime identified in
 
 8 U.S.C. § 1227
 
 (a)(2) will be placed in removal proceedings under 8 U.S.C. § 1229a. 8 U.S.C. § 1229a (a)(1) & (2) (2012). Those convicted of an aggravated felony who were removed under 8 U.S.C. § 1229a are rendered ineligible for readmission to the United States, meaning they are forever barred from entering the country unless the Attorney General consents to the application for admission.
 

 Id.
 

 § 1182 (a)(9)(A)(ii)(II) (2012). Those convicted of a crime involving moral turpitude or a crime related to a controlled substance are similarly permanently inadmissible and deportable.
 

 Id.
 

 §§ 1182 (a)(2)(A), 1227 (a)(2)(A)(i), & 1227 (a)(2)(B)(i) (2012). Those who were removed for other grounds are eligible to apply for readmission after ten years (following a first order of removal) and twenty years (following a second order of removal).
 

 Id.
 

 § 1182 (a)(9)(A)(ii) (2012).
 

 Ajay Chaudry, et al., the Urban Inst., Facing Our Future: Children in the Aftermath of Immigration Enforcement 27-33, 41-51 (Feb. 2010) https://www.fcd-us.org/assets/2016/04/FacingOurFuture.pdf.
 

 See
 
 supra
 
 note 14.
 

 See
 
 supra
 
 notes 3 & 4.
 

 The government cites several cases for the proposition that deportation is not "punishment" for a criminal offense. None, however, deals with the Sixth Amendment question presented in this appeal and all addressed deportation in a context that did not involve a criminal prosecution. The first set of cases invoke Congress's authority to define groups of people to exclude or remove from the United States.
 
 See
 

 Reno v. American-Arab Anti-Discrimination Comm.
 
 ,
 
 525 U.S. 471
 
 , 488-91,
 
 119 S.Ct. 936
 
 ,
 
 142 L.Ed.2d 940
 
 (1999) (relying on the executive's broad prosecutorial discretion to hold that "an alien unlawfully in this country has no constitutional right to assert selective enforcement as a defense against his deportation" when a person, not convicted of any crime, is removed for overstaying a visa or is in the United States under a student visa, but is not in school);
 
 Bugajewitz v. Adams
 
 ,
 
 228 U.S. 585
 
 , 591,
 
 33 S.Ct. 607
 
 ,
 
 57 L.Ed. 978
 
 (1913) (holding that deportation pursuant to Congress's power to exclude women suspected of being prostitutes, where no criminal prosecution was involved, did not violate the Ex Post Facto Clause);
 
 Fong Yue Ting
 
 ,
 
 149 U.S. at
 
 699 n.1, 730,
 
 13 S.Ct. 1016
 
 (affirming Congress's power to exclude Chinese nationals who had lived in the United States for a number of years under the Chinese Exclusion Act; no criminal proceedings were involved). Another case held that the removal hearing itself is not a criminal proceeding.
 
 See
 

 Immigration & Naturalization Serv. v. Lopez-Mendoza
 
 ,
 
 468 U.S. 1032
 
 , 1038, 1045-46,
 
 104 S.Ct. 3479
 
 ,
 
 82 L.Ed.2d 778
 
 (1984) (holding that the Fourth Amendment exclusionary rule was inapplicable in removal proceedings because it was not a criminal proceeding, where a person's status as a noncitizen was discovered only as a result of an unlawful arrest).
 

 Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104-132,
 
 110 Stat. 1214
 
 , 1274 (codified as amended at
 
 8 U.S.C. § 1227
 
 (a)(2)(A)(i)(II) (2012) ).
 

 See
 
 supra
 
 note 7.
 

 See
 
 supra
 
 note 14.
 

 For example, conviction of an aggravated felony renders a person "conclusively presumed to be deportable,"
 
 8 U.S.C. § 1228
 
 (c) (2012) ; subjects them to "expedit[ed] removal," forcing the person to counter removal proceedings from jail,
 

 id.
 

 § 1228 (a)(1) & (3) (2012) ("[T]he Attorney General shall provide for the initiation and, to the extent possible, the completion of removal proceedings, and any administrative appeals thereof, in the case of any alien convicted of an aggravated felony before the alien's release from incarceration for the underlying aggravated felony."); and makes them ineligible for judicial review of the final order of deportation, except under limited circumstances,
 

 id.
 

 § 1252 (a)(2)(C) & (D) (2012) ("[N]o court shall have jurisdiction to review any final order of removal against an alien who is removable by reason of having committed [a crime involving moral turpitude or relating to a controlled substance] or [an aggravated felony]," with the exception of "constitutional claims or questions of law."). They are precluded from applying for asylum,
 

 id.
 

 § 1158 (b)(2)(B)(i) (2012); cancellation of removal,
 

 id.
 

 § 1229b (b)(1)(C) (2012); or a waiver of "inadmissib[ility] or deportab[ility]" under the Violence Against Women Act,
 

 id.
 

 § 1229b (b)(2)(A)(iv) (2012). They are also categorically excluded from being granted voluntary departure (and thus, the opportunity to avoid a prior order of removal on their record).
 

 Id.
 

 § 1229c (a)(1) & (b)(1)(C) (2012). There are no similar provisions for those not convicted of crimes.
 

 Similarly, although any noncitizen
 
 may
 
 be arrested and detained pending a decision on whether the person is to be removed from the United States,
 

 id.
 

 § 1226 (a) (2012), those not convicted of a crime may be released on bond or conditional parole,
 

 id.
 

 , while those convicted of certain crimes (
 
 e.g.
 
 , an aggravated felony or a crime involving moral turpitude)
 
 must
 
 be taken into custody and may not be released, except in limited circumstances found by the Attorney General to be necessary to protect a witness involved in an investigation into major criminal activity,
 

 id.
 

 § 1226 (c) (2012). Additionally, although a person who has been ordered removed is to be detained, the Attorney General has discretion not to detain a person between the time the order of removal is entered and when the person is actually removed, with the exception of those convicted of an aggravated felony, who must be detained during this time,
 
 8 U.S.C. § 1231
 
 (a)(2) (2012), and could continue to be detained beyond the prescribed removal period, if removal does not actually occur during this period of time,
 

 id.
 

 § 1231 (a)(6) (2012).
 

 Exec. Order No. 13768,
 
 82 Fed. Reg. 8799
 
 , 8800 (Jan. 30, 2017) (Trump administration); Mem. from John Morton, Director, U.S. Immigration and Customs Enforcement, to All Ice Employees, re: Civil Immigration Enforcement: Priorities for Apprehension, Detention, and Removal of Aliens (Mar. 2, 2011) (Obama administration).
 

 In the past, deportation was dismissed as "collateral" and therefore not integral to a criminal prosecution, in part based on reasoning that, following conviction, there was an intervening decision-maker and proceeding, which attenuated the connection between a criminal conviction and removal.
 
 See
 

 Padilla
 
 ,
 
 559 U.S. at 361-63
 
 ,
 
 130 S.Ct. 1473
 
 (discussing both the use of a "judicial recommendation against deportation, or JRAD" between 1917 and 1990, which acted as a bar against deportation, as well as the end of the Attorney General's authority to grant discretionary relief). As
 
 Padilla
 
 explained, that is an outdated view that has been overtaken by changes to the INA initiated in 1996 and is not determinative of the scope of the Sixth Amendment right to effective assistance of counsel.
 
 See
 

 id.
 

 at 363-64 & n.5,
 
 130 S.Ct. 1473
 
 . We reject statements to the contrary made in
 
 Foote v. United States
 
 ,
 
 670 A.2d 366
 
 , 372 (D.C. 1996), decided pre-
 
 Padilla
 
 , and
 
 Olafisoye v. United States
 
 ,
 
 857 A.2d 1078
 
 , 1084 (D.C. 2004) (citing
 
 Foote
 
 ). Moreover, it appears that the issue of deportation was moot in both cases.
 
 Foote
 
 involved a defendant who might have been a U.S. citizen and, therefore, was not deportable,
 
 670 A.2d at 372
 
 (opinion does not state that defendant was not a U.S. citizen and refers to "hypothetical civil or administrative proceedings ... [that] in most cases could not be brought against [the defendant]"); the offenses at issue in
 
 Olafisoye
 
 did not render the noncitizen in that case deportable upon conviction,
 
 857 A.2d at 1083
 
 , 1084 & n.6. Judge Fisher's dissent's reliance on
 
 People v. Suazo
 
 ,
 
 146 A.D.3d 423
 
 ,
 
 45 N.Y.S.3d 31
 
 , 32 (2017),
 
 leave to appeal granted
 
 ,
 
 29 N.Y.3d 1087
 
 ,
 
 64 N.Y.S.3d 177
 
 ,
 
 86 N.E.3d 264
 
 (2017), is similarly unpersuasive because in that case, the immigration impact of the conviction was "unclear" and the court continued to cite the discredited notion that deportation is "still collateral."
 

 Id.
 

 For this reason, the holding in
 
 Amezcua v. Eighth Judicial Dist. Court
 
 is not persuasive authority as the appellant in that case conceded he was a U.S. citizen and, thus, was not subject to deportation if convicted.
 
 See
 

 130 Nev. 45
 
 ,
 
 319 P.3d 602
 
 , 604 n.3 (2014).
 

 It is well settled that the Constitution generally, and the Sixth Amendment jury trial right in particular, apply to persons in the United States, not only to citizens of the United States.
 
 See
 

 Zadvydas v. Davis
 
 ,
 
 533 U.S. 678
 
 , 694-95,
 
 121 S.Ct. 2491
 
 ,
 
 150 L.Ed.2d 653
 
 (2001) (detailing the history of applying protections of the Constitution to "all persons within the territory of the United States");
 
 Wong Wing v. United States
 
 ,
 
 163 U.S. 228
 
 , 238,
 
 16 S.Ct. 977
 
 ,
 
 41 L.Ed. 140
 
 (1896) ("[I]t must be concluded that all persons within the territory of the United States are entitled to the protection guaranteed by [the Fifth and Sixth A]mendments.")
 

 Although Judge Fisher's dissent acknowledges that a repeat offender may be entitled to a jury trial if exposed to a greater penalty for the same offense committed by a first-time offender, it reasons that a recidivist could be deemed to have committed an "aggravated form" of the offense: a "
 
 different
 
 offense with a different maximum sentence."
 
 Post
 
 at 1275. The same could be said here, where the noncitizen is deemed to have committed an "aggravated felony," see
 
 supra
 
 note 3, and, as a result, is subject to a more severe penalty than the citizen. We are also unpersuaded by the dissent's reliance on
 
 Lewis v. United States
 
 ,
 
 518 U.S. 322
 
 ,
 
 116 S.Ct. 2163
 
 ,
 
 135 L.Ed.2d 590
 
 (1996).
 
 Lewis
 
 dealt with an entirely different situation, where a defendant claimed to have a right to a jury trial because he faced potential aggregate incarceration of more than six months if convicted of two counts of the same offense (obstructing the mail), which was undisputedly "petty."
 

 Id.
 

 at 324-25
 
 ,
 
 116 S.Ct. 2163
 
 . As the Court observed, the "penalty authorized by Congress manifests its judgment that the offense is petty."
 

 Id.
 

 at 328
 
 ,
 
 116 S.Ct. 2163
 
 . Here, the penalty of deportation manifests the legislative judgment that conviction of a single count of sexual abuse of a minor is serious.
 

 Judge Fisher's dissent cites
 
 Brown
 
 ,
 
 675 A.2d at 955
 
 , for the proposition that even if removal is triggered by a criminal conviction, it is not "part of the punishment for the crime."
 
 Post
 
 at 1273. Reliance on
 
 Brown
 
 is inapt.
 
 Brown
 
 rejected a defendant's claim that a
 
 subsequent
 
 conviction of a petty offense, which activated a suspended sentence imposed in a
 
 previous
 
 criminal proceeding, triggered the jury trial right in the prosecution of the subsequent offense, reasoning that Brown "mistakenly characterize[d]" the reimposed sentence "as an additional statutory penalty attributable to the present offense," which was, instead, "a continuation of the prosecution of his first offense."
 
 675 A.2d at 955
 
 . Thus, it did not constitute punishment for the conviction in the criminal prosecution for which the jury trial was demanded.
 

 Id.
 

 Here, on the other hand, by statute, the deportation penalty attaches directly upon conviction of the offense in the criminal prosecution for which appellant claims the right to a trial by jury.
 

 The government's argument rests on a sentence in a footnote in
 
 Blanton
 
 in which the Court refused to consider the penalties for DUI "in other [s]tates."
 
 489 U.S. at
 
 545 n.11,
 
 109 S.Ct. 1289
 
 . But these were penalties that did not apply to the petitioners before the Court, who faced only penalties imposed by the state of Nevada. In the same footnote, the Court also noted that it "frequently looked to the federal classification scheme in determining when a jury trial must be provided."
 

 Id.
 

 As noted, federal law classifies sexual abuse of a minor as an "aggravated felony."
 
 8 U.S.C. § 1101
 
 (a)(43)(A), and imposes the penalty of deportation upon conviction of this and other specified offenses,
 

 id.
 

 § 1227 (a)(2)(A) (2012).
 

 The legislature is "far better equipped to perform the task, and [is] likewise more responsive to changes in attitude and more amenable to the recognition and correction of their misperceptions."
 
 Blanton
 
 ,
 
 489 U.S. at 541-42
 
 ,
 
 109 S.Ct. 1289
 
 (alteration in original) (quoting
 
 Landry v. Hoepfner
 
 ,
 
 840 F.2d 1201
 
 , 1209 (5th Cir. 1988) ).
 

 Judge Glickman's dissent relies on two unpublished federal district court opinions, from California and Kentucky, for the proposition that the deportation penalty should not be considered because it was imposed by Congress.
 
 Post
 
 at 1270-71 n.3. These cases address state SORA registration requirements, not deportation; in this opinion we do not address appellant's claim that sex offender registration entitles him to a jury trial. See
 
 supra
 
 note 6. In any event, we find these opinions unpersuasive. In
 
 Rauch v. United States
 
 , where the defendant pleaded guilty to a federal offense, the district court stated that the view of the state of California, which imposed the registration requirement, was irrelevant on the question of the seriousness of the federal offense as the registration requirement was not enacted by Congress "in conjunction with" the offense. No. 1:07-CV-0730 WMW,
 
 2007 WL 2900181
 
 , *3,
 
 2007 U.S. Dist. LEXIS 72616
 
 , *8-9 (E.D. Cal. Sept. 28, 2007). The opinion does not explain what "in conjunction with" means; we note, however, that in the case before us, Congress enacted the penalty of deportation to attach, specifically, to conviction for "sexual abuse of a minor," the offense of which appellant was convicted under
 
 D.C. Code § 22-3010.01
 
 . See
 
 supra
 
 notes 2 and 4. Having dismissed California's views as irrelevant,
 
 Rauch
 
 then does an about-face and relies on California's interpretation that its sex offender registration requirement is not punishment "for purposes of state and federal ex post facto analysis."
 
 Id.
 
 at *3,
 
 2007 U.S. Dist. LEXIS 72616
 
 at *9 (citing
 
 People v. Castellanos
 
 ,
 
 21 Cal.4th 785
 
 ,
 
 88 Cal.Rptr.2d 346
 
 ,
 
 982 P.2d 211
 
 , 212 (Cal. 1999) ). As we discuss in the next section, analysis under the Sixth Amendment guarantee to a jury trial is fundamentally different from analysis under the Fifth Amendment's Ex Post Facto and Double Jeopardy Clauses because of differences in the constitutional text and rights protected.
 

 The
 
 Ivy
 
 case is similarly unpersuasive as it relies on
 
 Rauch
 
 . It also relies on this court's conclusion, in a plain error case, that because SORA registration is a "regulatory" measure that does not offend the Fifth Amendment Ex Post Facto and Double Jeopardy Clauses, it does not trigger the right to jury trial.
 
 Ivy v. United States
 
 , No. 5:08-CR-00021-TBR,
 
 2010 WL 1257729
 
 *3,
 
 2010 U.S. Dist. LEXIS 28933
 
 *7 (W.D. Ky. March 26, 2010) (citing
 
 Thomas v. United States
 
 ,
 
 942 A.2d 1180
 
 , 1186 (D.C. 2008) (in turn citing
 
 In re W.M.
 
 ,
 
 851 A.2d 431
 
 , 440-51 (D.C. 2004) (upholding constitutionality of sex offender registration against Fifth Amendment challenges) ) );
 
 see
 
 id.
 

 (citing
 
 Cutshall v. Sundquist
 
 ,
 
 193 F.3d 466
 
 , 476 (6th Cir. 1999) (upholding constitutionality of Tennessee's sex offender registration statute against a challenge based on the Ex Post Facto Clause, Double Jeopardy Clause and as a Bill of Attainder).
 
 Ivy
 
 also relied on the short period of maximum incarceration, "ninety days, significantly less than the threshold amount of six months."
 
 Id.
 
 at *4,
 
 2010 U.S. Dist. LEXIS 28933
 
 at *9.
 

 Congress could decide, for example, that certain otherwise "petty" state offenses punishable by no more than six-months imprisonment should have an enhanced prison sentence of one year in order to address a crisis that affects the nation as a whole. In such a case, there can be little doubt that the enhanced maximum period of incarceration would weigh in the
 
 Blanton
 
 analysis because the accused would face the greater period of incarceration, regardless of whether the underlying state offense, without the congressionally imposed enhancement, would be deemed petty.
 

 The government and Judge Fisher's dissent rely on
 
 State ex rel. McDougall v. Strohson
 
 ,
 
 190 Ariz. 120
 
 ,
 
 945 P.2d 1251
 
 , 1256 (1997) (en banc), which considered the federal prohibition on firearms possession by persons convicted of certain state offenses, and concluded that the federal prohibition did not convert the underlying petty offense into a serious one for Sixth Amendment purposes. But that reliance is inapt. In concluding that the defendant in that case was not entitled to a jury trial, the court relied on an analogy to state precedent that counsel had no obligation to advise a pleading defendant that "he might be subjecting himself to deportation under federal law."
 

 Id.
 

 That state law precedent has since been overruled, on constitutional grounds, by
 
 Padilla
 
 , and is in tension with D.C. law, which requires that a pleading defendant be informed of the possibility of immigration consequences.
 
 See
 

 D.C. Code § 16-713
 
 (2012 Repl.). In addition,
 
 Strohson
 
 is inapposite as the court in that case observed that the inability to possess a firearm, "while admittedly very important to some people, does not present the type of universal grave consequence we have found in cases invoking a right to jury trial."
 
 Strohson
 
 ,
 
 945 P.2d at 1256
 
 . As we have discussed, the Court has recognized that deportation is such a grave consequence of a criminal conviction.
 

 Thus, in deciding whether these particular constitutional guarantees are implicated, the Court has had to devise tests to interpret the state's motivation behind the challenged actions and the effect of the sanctions. For example, in
 
 Smith v. Doe
 
 ,
 
 538 U.S. 84
 
 , 89-90, 92-93, 105-06,
 
 123 S.Ct. 1140
 
 ,
 
 155 L.Ed.2d 164
 
 (2003), the Court employed the "intent-effects" test to determine whether, in imposing a registration requirement for sex offenders under Alaska Stat . § 12.63.010 with retroactive effect, the legislature intended to establish non-punitive civil proceedings or to impose punishment in deciding whether the Ex Post Facto Clause applied. In
 
 United States v. Ursery
 
 ,
 
 518 U.S. 267
 
 , 271-72, 278,
 
 116 S.Ct. 2135
 
 ,
 
 135 L.Ed.2d 549
 
 (1996), the Court employed the "intent-effects" test to determine whether the Double Jeopardy Clause applied when an
 
 in rem
 
 civil forfeiture proceeding of property used in connection with illegal drug transactions had preceded a criminal prosecution based on the same underlying drug transactions.
 
 See
 

 Kennedy v. Mendoza-Martinez
 
 ,
 
 372 U.S. 144
 
 , 168-69,
 
 83 S.Ct. 554
 
 ,
 
 9 L.Ed.2d 644
 
 (1963) (listing factors considered under the "intent-effects" test).
 

 The government refers to
 
 Padilla's
 
 citation of
 
 Fong Yue Ting v. United States
 
 ,
 
 149 U.S. 698
 
 ,
 
 13 S.Ct. 1016
 
 ,
 
 37 L.Ed. 905
 
 (1893), as a reaffirmation of the holding of that case. But
 
 Padilla
 
 cited
 
 Fong Yue Ting
 
 for the proposition that removal is a "particularly severe 'penalty.' "
 
 559 U.S. at 365
 
 ,
 
 130 S.Ct. 1473
 
 (quoting
 
 Fong Yue Ting
 
 ,
 
 149 U.S. at 740
 
 ,
 
 13 S.Ct. 1016
 
 ). The case before us does not implicate
 
 Fong Yue Ting's
 
 holding that certain constitutional provisions, including the right to jury trial, do not apply to
 
 deportation proceedings
 
 because they are not criminal proceedings; appellant's claim in this case is to a jury trial in a
 
 criminal prosecution
 
 that is indisputably covered by the Sixth Amendment.
 

 The government also argues that, if the possibility of removal is considered in a
 
 Blanton
 
 analysis, all sorts of other consequences that may follow after a conviction could also be factors, such as termination of employment and ineligibility for gun ownership. These are not before us. Appellant does not rest his constitutional claim on any of these consequences, and our holding is limited to removal from the country, a penalty that the Court has recognized as grievous and "enmeshed" in the criminal proceeding.
 

 Judge Fisher's dissent suggests that appellant's conviction for sexual abuse of a minor, although it rendered appellant deportable, should not be considered an aggravated felony under the INA.
 
 Post
 
 at 1275 n.6. At trial, all parties and the trial judge assumed that it is. Similarly, on appeal before a division of this court and on rehearing en banc, there has been no suggestion otherwise. As a factual matter, the government has acted accordingly, suspending appellant's asylum petition upon commencement of the criminal prosecution.
 

 As applied to offenses in the District of Columbia punishable by a maximum sentence of less than six months that would not be jury demandable under the District's statute, see
 
 supra
 
 note 9, they include: sexual abuse of a minor
 
 8 U.S.C. §§ 1101
 
 (a)(43)(A), 1227 (a)(2)(A)(iii) ; offenses related to controlled substances (excluding possession of small quantities of marijuana),
 

 id.
 

 § 1227 (a)(2)(B) ; and domestic violence, violation of a protection order, stalking, and child abuse,
 

 id.
 

 § 1227 (a)(2)(E).
 

 The BIA has determined that convictions for certain offenses are crimes involving moral turpitude under
 
 8 U.S.C. §§ 1182
 
 (a)(6)(A)(i) & 1227 (a)(2)(A)(ii), that can result in deportation or exclusion.
 
 See, e.g.
 
 ,
 
 Matter of Guillermo Diaz-Lizarraga
 
 ,
 
 26 I. & N. Dec. 847
 
 , 852-53 (BIA 2016) (theft crimes). Theft crimes are codified at
 
 D.C. Code §§ 22-3211
 
 & 3213 (2012 Repl.).
 

 See, e.g.
 
 ,
 
 Reyes v. Lynch
 
 ,
 
 835 F.3d 556
 
 , 558 (6th Cir. 2016) (concluding that prostitution is a deportable offense as a crime involving moral turpitude under
 
 8 U.S.C. § 1227
 
 (a)(2)(A)(ii) ).
 

 See, e.g.
 
 , U.S. Dep't of State, Foreign Affairs Manual 302.3-2 (B)(2) (U) (Vol. 9 2017) (including fraud (codified at
 
 D.C. Code §§ 22-1402
 
 & -1510 (2012 Repl.) ) and lewdness (codified at
 
 D.C. Code § 22-1312
 
 (2012 Repl.) ) within the definition of conduct involving moral turpitude, and excluding gambling (codified at
 
 D.C. Code §§ 22-1702
 
 , 1703, 1704, 1706, & 1708 (2012 Repl.) ), vagrancy (codified at
 
 D.C. Code § 22-2302
 
 (2012 Repl.) ), disorderly conduct (codified at
 
 D.C. Code § 22-1321
 
 (2012 Repl.) ), and trespass (codified at
 
 D.C. Code § 22-3302
 
 (2012 Repl.) ).
 

 The defendant could argue that the government's representation in the criminal proceeding provides the basis for judicial estoppel in a later deportation proceeding where the government takes the opposite view.
 
 See
 

 United States v. Barahona
 
 , No. 14-DVM-1945,
 
 2014 WL 7054630
 
 , at *3 n. 5, 2014 D.C. Super. LEXIS 19, at *9 n.5 (D.C. Super. Ct. Dec. 12, 2014) (noting that where the government urged the trial court to conclude that the defendants could not be deported following a conviction, the government would then be precluded by the doctrine of judicial estoppel "from taking a contrary position in hypothetical future immigration hearings involving the defendants");
 
 cf.
 

 Mason v. United States
 
 ,
 
 956 A.2d 63
 
 , 65-66 (D.C. 2008) (judicially estopping a defendant who changed position in different proceedings concerning citizenship status and setting out three factors to be considered in applying judicial estoppel);
 
 Porter Novelli v. Bender
 
 ,
 
 817 A.2d 185
 
 , 188 (D.C. 2003) (applying judicial and equitable estoppel to prevent a party from arguing contrary legal positions at separate, but related, proceedings).
 
 See generally
 

 Ward v. Wells Fargo Bank, N.A.
 
 ,
 
 89 A.3d 115
 
 , 127-28 (D.C. 2014).
 

 E.g
 
 ., novel Fourth Amendment motions to suppress and Sixth Amendment claims of ineffective assistance of counsel.